## SWEENEY v. MISSOURI PAC. R. CO. (two cases).

### Nos. 1179, 1180.

Court of Appeal of Louisiana, First Circuit.
June 30, 1933.

Hawkins & Pickrel, of Lake Charles, for appellants.

Hudson, Potts & Bernstein, of Monroe, for appellee.

MOUTON, Judge.

The district judge rendered the following opinion and judgment in this case:

"This case was tried on the merits some time ago, and submitted on briefs, those furnished by the defendant being filed on September 19, 1932.

"The plaintiff, Newton F. Sweeney, brought this suit to recover judgment for damages to his truck; for personal injuries; and for the death of his minor son, all resulting from the driving of a truck, in which the plaintiff and his son were riding, into the middle of a freight train of the defendant company, one dark, foggy night, at a point on the Old Spanish Trail where it is crossed by defendant's railroad.

"As acts of negligence on the part of the defendant railroad, the plaintiff alleged:

"1. That the railroad crossing was flush with the highway, and of about the same color.

"2. That defendant failed to maintain any watchman at the crossing.

"3. That no bell was rung or whistle blown by the train as it approached the crossing.

"4. That no lights were on the freight train except on the engine and the caboose.

"5. That defendant failed to maintain any gates, barriers or lights at the crossing.

"6. That the defendant has at the crossing no 'Stop, Look and Listen' sign; and that there was no other sign or warning than a

'Louisiana Law Stop' sign, located 'a considerable distance south of the highway, and so placed that the lights of a truck or car travelling as the truck in which your petitioner and his son were travelling at the time of the collision, would strike or reflect upon it.'

"In an opinion handed down on an exception of no right and no cause of action, all of plaintiff's contentions in regard to alleged acts of negligence, with the exception of those mentioned in paragraph 6, above, were decided adversely to the plaintiff, thus leaving for consideration here the sufficiency of the warning sign or signs at the crossing, and defendant's alternative plea of contributory negligence.

"At the time of the accident, between 8:00 and 9:00 o'clock at night, the plaintiff, Newton F. Sweeney and his son were riding in the inclosed cab of a one and one-half ton Chevrolet truck, Sweeney on the right end of the seat, G. B. Belaire driving from the left, and the boy sitting between the two men.

"Belaire, the driver of the truck, was an employee of Sweeney, and was absolutely under his control and direction at the time of the accident. (Tr. 17, 116).

"While travelling eastward on the Old Spanish Trail, at approximately 25 miles an hour, when visibility was so poor that those in the truck could see only 'a few feet ahead' (Petition, par. IX), or 30 or 40 feet, as testified by Belaire (Tr. 5, 40), and 25 feet according to Sweeney (Tr. 9, 101, 102, 103), Belaire and Sweeney suddenly saw a freight train half way across the highway, into which train the truck crashed, killing the unfortunate son of Sweeney, injuring the father, and wrecking the truck.

"Act 12 of 1924 requires that a 'Louisiana Law Stop' sign be placed not closer than 50 feet and not further than 75 feet from the nearest rail of the track. The required sign is now so located at the crossing, and I do not believe it has ever been moved.

"The plaintiff claims the sign is located so far to the south of the highway, which is perfectly level and straight on each side of the crossing for some miles, that the lights of a car will not show the sign at night.

"In accordance with agreement of counsel, I visited the scene of the accident between 8:30 and 9:30 on the night of June 9, 1932, which was dark, but clear. About a ⅝ new moon was shining, and was at an angle of about 45°.

"Accompanied by counsel for both sides, I made a number of tests of the visibility of the sign in question, the lettering on which was much worn.

"Looking for the sign, and knowing its location, it was dimly outlined by the lights of the cars I drove, from a distance of 600 feet. From a distance of 400 feet, the sign was clearly visible. When 150 feet from the sign, the lettering on the sign could be read, although it was badly worn. Photograph D-3 clearly shows the location of the sign, and that it can be easily seen from cars travelling eastward. It is plain from Belaire's testimony that he saw the sign on the night of the accident:

" 'Q. At that time were there any signs or any boards on which signs had been put? A. Not a thing but the Louisiana Stop Sign, is all that was there.

" 'Q. Did you see that that night? A. If I saw it?

" 'Q. Yes? A. Why sure.

" 'Q. I say that night did you see the sign? A. No sir. I have not paid no mind after I hit the train for that sign. The first thing I seen was the train.'

"Since the railroad company had the usual and required sign, at the proper place, at the crossing, in question, there was a full compliance with the law in regard to warning signs at crossings.

"The record shows abundantly that the usual and customary crossing signals were given by blowing the whistle and ringing the bell as the train approached this crossing, but as shown in the opinion on the exception of no right and no cause of action, there was no sufficient allegation of negligence on this ground.

"Since the defendant was guilty of no negligence, the defendant is in no way liable for the tragic fate that befell the splendid young son of the plaintiffs.

"This view of the case makes it unnecessary to discuss defendant's alternative plea of contributory negligence.

"For the foregoing reasons, the law and the evidence being in favor thereof:

"It is ordered, adjudged and decreed that there be judgment herein in favor of the defendant, rejecting the plaintiff's demands at his cost."

The evidence shows that the train when going over the crossing where the accident occurred was traveling at a rate of speed not exceeding twenty miles an hour.

As stated by the district judge, it was abundantly shown that the customary signals were given by blowing the whistle and ringing the bell as the train approached this crossing. It is therefore clear that defendant company was not at fault in the management of its train when plaintiff's truck ran against it at the crossing.

The first question which presents itself for decision, and the most vital in the case, is as to whether defendant company had complied with the Louisiana law stop by erecting on the side of the road on which plaintiff's truck was going, not less than 50 feet nor more than 75 feet from the nearest rail of that crossing, a signboard painted white with red lettering as

required by section 2, Act No. 12 of 1924, p. 16.

Mr. Maynor, employee of defendant company, under whose direct supervision these "Louisiana Stop Signs" were erected near the crossings of railroad tracks, testified that the stop sign on the west of the crossing in question was erected 63 feet from the west rail of the railroad track. Hence, according to his testimony, this signboard was not at a distance "less than 50 feet nor more than 75 feet from the nearest rail of said crossing," and was clearly within the limit specified in the statute.

It is shown that the signboard was placed there long before the date of the accident. It was built on the side of the paved highway in reasonable proximity thereto, and in that respect in compliance with the provisions of the statute.

The contention of the plaintiff is that it had been originally located about 30 feet from the railroad track and had been removed after the accident, further west from where the measurement of Mr. Maynor was made.

Plaintiff and two of his witnesses testify that after the accident they noticed evidence of new dirt at the foot of the post on which the signboard was attached. Not one of these witnesses said, however, that they had seen this post moved from where it stood before the accident; and no other witness testified to such a fact.

Mr. Dalby, witness for defendant, examined the ground where it is claimed that the removal was made, and said he could find no evidence that this post had been moved.

These signposts, it is shown, are erected and moved by the section foreman who is under the direct supervision of Mr. Maynor.

Mr. Maynor testifies that no foreman would move one of these posts without requesting authority from him to move it; says that the sign along this highway in question has never been moved, as far as he knows, and, if it had been moved, he would have known it; that he never gave instructions for the removal.

The district judge in his opinion, above reproduced, says, in reference to this signpost: "The required sign post is now * * * located at the crossing, and I do not believe it has been moved."

We think that the evidence on this subject justifies that conclusion. It is, however, certain, as we see the case, that in this finding of fact the district judge has not fallen into a manifest error, warranting a reversal of the judgment by this court under the well-settled doctrine which governs in such cases.

Plaintiff claims the night was misty, foggy, and dark when the accident happened, and that at that time the lettering on the sign was dim or had faded away.

The district judge, in his opinion, says, at the request of counsel and accompanied by them, he made a test of the visibility of the sign. He says: "Looking for the sign and knowing its location, it was dimly outlined by the lights of the cars I drove, from a distance of 600 feet. From a distance of 400 feet, the sign was clearly visible. When 150 feet from the sign, the lettering on the sign could be read, although it was badly worn."

Counsel for plaintiff, in their comment on the foregoing remarks of the court, say that the night the district judge made the test was clear, and that the night of the accident was hazy and dark. According to the test made by the court, at 600 feet the outlines of the sign were dimly visible, at 400 feet the sign was clearly visible, and at 150 feet the lettering on the sign, though badly worn out, could be read.

Several witnesses for defendant company testify that the night of the accident was clear, and that there were no clouds.

Conceding, however, that the night was misty, hazy, or dark, is it reasonable to believe that Belaire, the driver of the truck, or plaintiff who was sitting in the cab with him, if they had been looking ahead, as both claim they were, and who were both familiar with that crossing, would not have seen that sign when they passed it on their way to the crossing? This sign was a few feet from the paved highway and 63 feet from the west rail of the track. If they had seen the sign as they passed it, and which we cannot believe they could have failed to see had they cast a glance in that direction, they would have had ample time to avoid the accident, as it is abundantly shown that, at 25 miles an hour, the speed they were traveling, the truck could have been stopped easily within a distance of 50 feet.

The only way to account for this unfortunate accident is that the driver of that truck and plaintiff were listless, not looking ahead as they were required to look under the circumstances, failed to see the signboard, and saw the train on the crossing only when about 25 feet from it and too late to avert the collision, which was the result of their sole negligence and fault.

As the defendant company was neither negligent nor at fault, the question of contributory negligence does not arise in the case, as was held below.

The demand of the plaintiff in this suit No. 4630, and of his wife, Mrs. Fannie Lee Sweeney, in suit No. 4632, were correctly rejected by the district judge by the judgments therein rendered, and which we hereby affirm with cost.