**PLUMMER v. GULF, M. & N. R. CO. et al.**
**HAMPTON v. SAME.**
**No. 1314.**

Court of Appeal of Louisiana. First Circuit.
March 6, 1934.

Ponder & Ponder, of Amite, for appellants.

Benj. W. Miller, of Bogalusa, for appellees.

MOUTON, Judge.

The two plaintiffs above named, while riding in a truck as guests of George Rouse, were injured in a collision of the truck with a passenger coach which was across a switch track of defendant railroad company.

Suits were brought by these plaintiffs in damages against George Rouse and defendant company, which resulted in judgments rendered against George Rouse who has not appealed; also in a judgment in favor of defendant company rejecting the demands of plaintiffs against it, from which these plaintiffs have appealed.

Our opinion will therefore be restricted to the issues involved in the two suits of these plaintiffs against defendant railroad company, which were consolidated below for trial and which were disposed of by the district judge for reasons given in one opinion and adversely to the contentions of these plaintiffs.

In these two cases, the defendant company filed exceptions of no right of action, which the court overruled, and in which we find no error.

### Merits.

The district court rejected the demands of the plaintiffs for the reasons given in its opinion, as follows:

"These two plaintiffs were riding as invited guests in a Chevrolet truck driven by the defendant, George Rouse, on the 11th day of February, 1932, shortly after 5 o'clock in the morning, when this truck ran into a passenger coach across a switch track operated by the defendant railroad company.

For the purpose of switching and turning trains, this switch track is used as one branch of a "Y" switch, which track crosses the highway leading from Bogalusa to Franklinton within the limits of the City of Bogalusa. The highway is paved and runs from Austin Street in Bogalusa in a westerly direction to Franklinton and crosses the main line of this railroad just west of Austin Street and then proceeds westerly around a slight curve in the highway north of the railroad shops to within a distance of about 125 feet of the crossing when the road becomes straight. There is no obstruction to the view in approaching this crossing from the east on the highway, except at night the headlight of an automobile would not throw the headlight of the car directly along the highway until the car had completed, or almost completed, the curve some 125 or 150 feet before reaching the street crossing, when there would be nothing to obstruct the view of the driver of a car going in a westerly direction and approaching this crossing from the east.

"The grounds of negligence relied on by the plaintiffs to hold the defendant railroad responsible may be divided into and discussed under four separate heads, all of which negligence is denied by the railroad company.

"(1) The first ground of negligence charged against the railroad is that the railroad failed to erect and maintain at this crossing a Louisiana law stop sign. Act Number 12 of 1924 which required all railroad companies to place these stop signs at certain distances on each side of the approach to these crossings does not apply to switch tracks nor does it apply to crossings in cities having a population of over ten thousand people. As this switch track, on which the accident occurred, is not part of the main line but is used for switching purposes and as the crossing is located within the City of Bogalusa, which has a population of over ten thousand, this law does not apply to this case. There has been no ordinance or regulation of the city introduced or cited which requires the placing of such sign at this switch track crossing and therefore the case will have to be decided on the law as interpreted without reference to this act. Pearce v. Missouri Pacific Railroad Company (La. App.) 143 So. 547.

"Even though it should be held that it was the duty of the defendant railroad to place such a stop sign at the crossing I find from the evidence in the case that there was such a sign placed at this crossing at the time of the accident. It is true that several witnesses testified that there was no such stop sign placed on either side of the crossing, but only a railroad crossing sign which was torn down by the impact of the car of plaintiff at the time he ran into the coach across the highway. However, the decided preponderance of the evidence convinces me that there was a stop sign placed at this crossing as required by the Act of 1924, above referred to. All of the employees of the defendant company testify that there was such a sign placed at both approaches to the crossing as required by this law, including Mr. E. R. Cassidy, and Mr. Yarbro, who are very positive on this point and whose testimony the Court believes is correct. In addition to that the City Engineer, Mr. Willis, also testified that there was such a sign placed at this crossing and had been so placed there for some time before the accident occurred. Therefore, whether or not it be held the duty of the railroad to place such a sign at the crossing, the preponderance of the evidence shows that there was such a sign placed at the crossing at the time of the accident, and therefore the plaintiffs have failed to prove their allegations of negligence on the part of the railroad company on this point.

"(2) The plaintiffs allege that the defendant railroad company was negligent in not having a flagman or switchman stationed at the crossing with a lantern or light to warn approaching motorists that the crossing was blocked by the passenger coach in the night time. The general rule of law on this point is that unless there are some unusual conditions of danger it is not necessary for railroads to station a flagman or other person with a lantern at the approach of a crossing to warn drivers of automobiles of the blocking of such crossing by railroad cars when such cars are placed across the highway on a switch or track in the usual and legitimate process of switching and operating the business of the railroad. St. Louis-San Francisco R. Co. v. Guthrie, 216 Ala. 613, 114 So. 215, 56 A. L. R. 1110; G. M. & N. R. Co. v. Kennard, 164 Miss. 380, 145 So. 110; G. M. & N. R. Co. v. Holifield, 152 Miss. 674, 120 So. 750.

"It has not been shown from the situation of the switch track across the highway at this point and the conditions confronting the drivers of motor cars along the highway were such as would require the railroad company to station a flagman with the usual lantern signal on both sides of the approach to the switch track to warn approaching motorists. As stated above, there were no obstructions

324

to cut off the view of a motorist traveling the highway going either direction some distance from the crossing, which would make it possible for the driver of a car to see a train standing across the track in ample time to stop his car if the headlights on the car were burning properly. The evidence shows that in this case there was no such flagman placed to warn approaching motorists on the highway, but as a matter of law the defendant railroad company was under no such duty to place such flagman to give warning to approaching motorists. Sweeney v. Missouri Pacific Railroad Co. (La. App.) 149 So. 147. Therefore it follows that plaintiff has not shown negligence against the railroad company on this ground.

"(3) Another ground of negligence charged against the railroad is that there were no lights on the inside or outside of the coach across the highway by which approaching motorists on the highway could see or be warned of such coach standing across and obstructing passage on the highway. The evidence shows to my satisfaction that there was no light on the inside or outside of the coach across the track. It was stopped directly on and across the highway. There was a light however of the usual size and color on the rear coach and on the front coach, as well as a headlight on the locomotive. While some of the witnesses for the plaintiff say that they did not see any lights yet their testimony is rather negative in character as against the positive testimony of several witnesses, employees of the railroad, to the effect that these lights were burning at the time of the accident. If as a matter of law, the railroad was required to have a light on or about the coach which was directly across and obstructed the highway then it follows that the railroad company was negligent in this respect in blocking the highway with an unlighted coach. However, as held in the case of G. M. & N. Railroad Co. v. Kennard, supra, and cases there cited, a railroad company is not required as a matter of law to have a light on a coach or box car placed across a highway or street in its switching operations unless there is some peculiar and special danger, and unless there is some obstruction to prevent an approaching motorist from seeing the car or coach across the track on approaching it along the highway with the lights on the automobile burning in the usual manner. This seems to be the principle of law which should be applied in this case as it evidently would be unreasonable as well as unnecessary to require a railroad company to place a light on every box car or passenger coach that was stopped for only a few minutes across the highway during switching operations as such requirements would make it necessary for the railroad company to equip box cars as well as passenger coaches with lights for this purpose. It is not shown anywhere that this precaution is required by any other railroad or by an ordinance or regulation of the city in which the switching operations were carried on. I am, therefore, of the opinion that as the railroad complied with the usual regulations by approaching the highway with its locomotive in front with a headlight burning and the usual red and green lights on the front and rear of the train that there was no legal necessity for the railroad company to have a light on the outside or inside of the passenger coach which was directly across, the highway at this crossing. Railroads have a right to cross highways and it is the duty of the public in approaching said crossings to give the railroad this right of way and the same principle which applies to leaving an unlighted or unguarded automobile on the highway at an unsuspected place does not apply in cases of this kind as contended for by plaintiffs' counsel in their brief filed in this case. Newsom v. I. C. Railroad Co., 11 La. App. 50, 122 So. 874.

"(4) The fourth and last ground of negligence charged against the railroad is that there was no whistle blown or bell rung to warn approaching motorists of the approach of the train across the highway, or to warn such motorists that the train was occupying the crossing over the highway. As stated above the Act of 1924 does not apply directly in this case, however, it may be stated that Section 1 of this Act 12 of 1924, expresses what is and ought to be a precaution to be observed by railroads at such crossings. It is generally held to be the duty of the railroad in approaching such a highway crossing to blow the whistle of the locomotive or ring the bell as a warning to approaching motorists. Pearce v. Missouri Pacific R. Company (La. App.) 143 So. 547. However, I am satisfied from the testimony in this case, that the whistle of the locomotive was blown before approaching the crossing and the bell was ringing, and being rung continuously during the time that the passenger coach was standing across the highway during the switching operations. The testimony of the witnesses for the plaintiffs on this point is more or less negative, and in fact some of them admitted that they did hear a whistle blow and the bell ring but thought it was in another direction. The coach was standing still across the highway at a point

where there was a street light which made this particular locality better illuminated than other parts of this highway. Plaintiffs have failed to show that there was any negligence on the part of the defendant railroad company in its failure to blow the whistle or ring the bell in making the crossing.

"As the defendant railroad company is not shown to be guilty of any negligence, it is not necessary to consider the question of whether or not any negligence of the driver of the truck should be imputed to the plaintiffs."

The district judge, in the foregoing opinion, has referred to the facts upon which his conclusions are grounded for the rejection of plaintiffs' demands.

A careful reading of the opinion shows that the facts referred to by the court are fully supported by the record. In addition to the facts mentioned by the court, it may be proper to refer to the proof which shows that at about 30 or 40 feet west of the crossing the defendant company had a street light that was burning at the time of the collision and by which the entire crossing was illuminated.

■ This street light, taken in connection with the other precautionary measures, such as the lights of the usual size on the front coach, on the rear coach, with the headlight on the locomotive, etc., referred to in the opinion of the court, constituted, in our opinion, all the precautionary measures devolving on defendant company for the protection of travelers going over that crossing during the nighttime.

■ The defendant company was not required, as stated in the opinion of the court on the decisions therein cited, to have had a station flagman or other person with a lantern to warn drivers of automobiles of the blocking of the crossing with a car placed across the highway on a switch or track in the usual and legitimate process of switching and operating the business of a railroad.

The evidence shows that the coach had been placed across the highway only for two or three minutes before George Rouse ran against it with his truck. The traveling public can expect that the switches in the yards of railroad companies may be so occupied temporarily by their coaches in operating their trains.

A case of this character is entirely different from one where a highway is blocked by an auto, truck, or other obstacle. In such a case, the party blocking the highway must warn approaching travelers of the danger ahead for the reason that they do not anticipate that they will meet such obstacles on public roadways or highways. The warning usually given by one thus blocking a highway is by means of a lantern, moving light, or other equally safe method.

In the instant case no such warning was necessary as the travelers on that highway could expect that the crossing would be temporarily occupied or blocked in the operation of the defendant's trains while carrying on its legitimate business. The warnings to which the traveling public was entitled were given by defendant company in the instant case, as hereinabove stated, and by the district judge in his opinion.

■ The defendant company was not negligent or at fault in placing this coach across the highway under the circumstances of this case. As it was not at fault, it could not possibly be guilty of contributory negligence, and cannot be held as a tort-feasor with George Rouse, if the latter was guilty of negligence however gross and inexcusable.

Such being the situation, the question as to the imputation of negligence to plaintiffs, the guests of George Rouse, does not arise.

Civil Code, art. 2315, says: "Every act whatever of man that causes damage to another, obliges him by whose fault it happened to repair it."

As the injuries which these plaintiffs suffered were not caused by the negligence or fault of defendant company, it is not liable for the damages claimed, as was held below.

The two judgments rendered against these plaintiffs are affirmed, and separate decrees will be entered in these cases.