70 So.2d 171 (1954)
RAMSEY
v.
LOUISIANA & A. RY. CO.
No. 8097.
Court of Appeal of Louisiana, Second Circuit.
January 26, 1954.
Lunn, Irion, Switzer, Trichel & Johnson, Shreveport, for appellant.
White, Holloman & White, Alexandria, for appellee.
AYRES, Judge.
This is an action in tort wherein the plaintiff sued the defendant for $2,855 for personal injuries, loss of earnings, and damage to his automobile, resulting from a collision occurring about 3 o'clock a. m. on June 29, 1952, with a train belonging to and operated by the defendant, while said train was at a standstill across the Jewella road in the City of Shreveport, Louisiana. After trial on the merits, the District Court, for written reasons, rendered judgment rejecting plaintiff's demands and dismissing his suit at his cost. The plaintiff prosecutes a devolutive appeal to this Court.
Plaintiff alleges that the defendant was negligent in stopping its train across the Jewella road without a flagman being stationed on either side of said train to warn traffic of the presence of said train; in that no warning of any kind was given to traffic on said road; in that a flat car on said train extended across the Jewella road; in that said flat car was of a dark color which blended into the darkness and the color of the road, and that due to its construction it presented a flat edge to approaching traffic; and, in that the lights of the traffic on said road shone over and under said flat car, making it impossible to detect its presence across the road.
Defendant denied any negligence, and, in the alternative, pleaded contributory negligence *172 on the part of plaintiff in bar of plaintiff's right to recovery, in these particulars: (1) He breached the mandatory duty of stopping before crossing the track as required by LSA-R.S. 32:343; (2) he breached the mandatory duty of stopping not less than ten feet nor more than fifty feet from the railroad before proceeding to cross, as required by LSA-R.S. 45:563; (3) he did not even slow down, or look, or listen, or take any care whatsoever before entering the crossing; (4) he was driving at an excessive rate of speed; and (5) he failed to use his senses of sight and hearing on approaching the railroad crossing.
The evidence shows that the train involved was a freight train of the defendant on a regular run from Greenville, Texas, to Shreveport, Louisiana, consisting of the locomotive, 82 cars, and a caboose. The train, upon arriving in the City of Shreveport and in approaching the freight yards, crossed the Jewella road and came to a standstill at a point on said train about 17 or 18 car lengths behind the locomotive. An employee alighted from the train and telephoned the railroad yard office to ascertain if the track was clear for the train to proceed. Information was given that a switch engine was proceeding in that direction, which necessitated the incoming freight to back to a switch in order to permit the meeting of the two. This operation consumed only a few moments' time, possibly not more than five minutes. No flagman was stationed at the street crossing to warn traffic of the presence of the train. There were no unusual atmospheric conditions or interferences, such as fog, dust, mist, snow or rain to prevent or obstruct normal night vision.
On the date of the occasion of this accident, plaintiff was driving his 1941 Studebaker Coupe, accompanied by Mrs. Elizabeth Juanita Ensminger, and Mr. Allen Cobb, on the Greenwood road, from which they turned south on the Jewella road, driving, according to their testimony, about 30 miles per hour, and ran into the train while it was standing still. This crossing was located between one and two city blocks south of the Greenwood road. Almost at the very instant of the impact, the train proceeded backward, barely permitting sufficient time for the passengers to alight from said automobile, dragging the automobile some 147 yards, and, for all practical purposes, destroying and demolishing the automobile.
It was plaintiff's contention that the freight car was a flat car standing across the highway, which permitted lights from approaching cars to be visible and his own lights to shine both below and above the outline of the flat car, and that on account of the color of the flat car, the height of its deck, and the presence of the lights, it blended into the color of the road in the darkness of the night, making it more difficult to see. Plaintiff stated that he was familiar with the location and the condition of this railroad crossing, and that the railroad crossing sign was out of proper position.
Plaintiff did not convince the court that the freight car which he struck was a flat car. In fact, the testimony of the train crew, corroborated by a list of the cars in the train, which list was known as a "consist", showed that there was no flat car in the train, but that the train consisted of various types of other cars, such as coal cars, box cars, gondolas, etc. Moreover, instead of any of these cars being directly and entirely across the highway, the evidence shows that two of the cars were coupled together in the lane of traffic of plaintiff's automobile, and that plaintiff ran into the coupling between the cars, which would have placed the trucks and wheels of the car to the left approximately in the center of the street, and the trucks and wheels of the car to plaintiff's right near the right hand side of the road. Viewing the situation from plaintiff's viewpoint, there were not only two freight cars with a space in between, confronting him, but there was a set of freight car wheels almost directly in the lane of traffic. These presented a much larger background or view than the bare edge of the side of a flat car's deck, as contended by plaintiff.
Plaintiff testified that he did not see the train or slacken his speed until a moment *173 before the actual impact. Mrs. Ensminger testified that she was not looking. She had turned around and was placing a newspaper in the back of the car at the time. Mr. Allen Cobb testified that he did not see the train until the moment of impact. Mr. Vascoe, a city policeman and a witness for plaintiff, traveling behind plaintiff in the same direction, arrived at the scene of the accident momentarily after its occurrence. He stated he observed the lights of automobiles on the opposite side of the train shining between the cars and casting shadows upon the street, and that he slowed down. After learning that plaintiff was injured, he called the police and an ambulance.
The general rule relative to negligence of a railroad in a factual situation such as we find here has been stated in 44 Am.Jur., p. 741, "Railroads", Section 501, as follows:
"In general, in the absence of special statute or ordinance, the presence of a railroad train or cars on a crossing is notice to the driver of a vehicle on the highway of such obstruction; and if there are no unusual circumstances, the railroad company is not chargeable with negligence per se merely because it leaves a train across the highway, without stationing guards, placing lights on the cars, or otherwise giving warning of the presence of the cars across the highway."
The same authority states an exception to the general rule in this language:
"However, the railroad company's duty is not necessarily discharged under all circumstances if it fails to give warning in some form of the presence of the obstruction. The atmospheric condition, obscurity and darkness of the crossing, the length of time it is obstructed, and the nature of the highway, may require that warning be given if the company is to be found in the exercise of due care, but in order to charge a railroad company with negligence in leaving an unlighted train across the highway in the night so as to make it liable for injury to an automobilist traveling on the highway running against it, the employees in charge of the train must, in the exercise of reasonable care, have knowledge that on account of the particular facts or situation involved people traveling along the highway in automobiles properly equipped with lights, and carefully operated at reasonable speed, would be likely to come into collision with the cars unless lights are placed on them to warn of their presence."
We do not find from the evidence any unusual facts or circumstances that would bring this case within the exception and out of the general rule as hereinabove quoted. The only exception claimed by the plaintiff was that the car across the highway was a flat car which was not proven, and that it extended at least across plaintiff's lane of traffic in said street. The policeman traveling in plaintiff's rear observed the train and slowed down and stopped, and the cars that plaintiff said he observed approaching the train from the opposite side must also have stopped, inasmuch as there was no indication that any other vehicle collided with the train while it was stopped across the street.
It is clear, in our opinion, that no negligence of the defendant or of its agents and employees, contributed to plaintiff's driving into and colliding with the side of the train. There are no unusual or extraordinarily dangerous conditions, facts or circumstances at the crossing. The train was stopped in order for a member of the crew to telephone the yard office and would have continued on in a few minutes' time after stopping. There were no obstructions or conditions to keep plaintiff from seeing the train had he been driving a car with proper lights and at a careful and reasonable rate of speed and keeping a proper lookout, and it was due to plaintiff's fault and negligence that the accident occurred.
The duty of the railroad in blocking a crossing is stated in the case of Arnold v. Illinois Cent. R. Company, La.App., 32 So. 2d 76, 77, 78, 79, in quoting from the case of Plummer v. Gulf, M. & N. R. Co., La. App., 153 So. 322, 323, as follows:

*174 "`The general rule of law on this point is that unless there are some unusual conditions of danger it is not necessary for railroads to station a flagman or other person with a lantern at the approach of a crossing to warn drivers of automobiles of the blocking of such crossing by railroad cars when such cars are placed across the highway on a switch or track in the usual and legitimate process of switching and operating the business of the railroad.'"
Continuing, the Court said:
"There were no unusual circumstances found to exist in that case which required the railroad to station a flagman at the crossing, or other signals, to warn approaching motorists. The same rule was announced and followed in the case of Domite v. Thompson et al, La.App., 9 So.2d 55, and in that case the court found as a fact that there was not sufficient fog or interference with visibility to make an exception to the rule that railroad cars across a highway are sufficient notice of the blocking of the highway to a motorist with proper lights and driving in a proper manner."
The Supreme Court, in the case of Squyres v. Baldwin, 191 La. 249, 185 So. 14, 17, recognized the general rule as hereinabove given and as stated in 99 A.L.R., page 1455. However, that case was one involving an exception to the general rule, as stated on page 18, in that "the falling snow was unusually heavy and dense, the ground and concrete pavement were covered with it and the night was as dark as Erebus itself", and "the low, black gravel cars were rendered a dull grey color in appearance, by reason of the snow which blanketed them, and blended perfectly with the dull leadened background."
The case of Domite v. Thompson, supra, was decided by this Court through Judge Taliaferro as the author of the opinion, who stated that the general rule had been followed in Louisiana and particularly in the cases of Sweeney v. Missouri Pac. R. Co., La.App., 149 So. 147; Plummer v. Gulf, M. & N. R. Co., supra; Jones v. Texas & Pacific R. Co., La.App., 154 So. 768.
In the Domite-Thompson case, which was a case involving a collision of a delivery truck with a gondola car of the Missouri-Pacific Railroad Company at the time it was being backed over a spur track which crosses U. S. Highway No. 165 near Woodworth in Rapides Parish at about 4:30 o'clock a. m., Judge Taliaferro stated in 9 So.2d at page 59, after quoting the general rule and the exception thereto:
"Counsels" position, of course, becomes untenable when the conclusion is reached that the crossing was free of atmospheric conditions at the time of the accident, of such character as to materially interfere with visibility. This conclusion brings the case squarely within the general rule that the presence of a train across a highway is adequate notice and warning to motorists that the road is blocked. The rule is also well established that a motorist is required, for his own safety and protection, if for no other reason, to maintain such rate of speed and lookout as will enable him to stop his vehicle within the distance illumined by its lights. This rule, a safe and sane one, when observed, serves to avert hundreds of accidents which would certainly occur but for such observance. Had the decedent observed the rule, he would doubtless be living today.
"The Squyres case typifies the exception to the general rule above stated."
Plaintiff testified that the range of his headlights was 200 yards. The rule is recognized that a motorist must drive his automobile with such care and at such reasonable rate of speed at to be able to stop within the range of his headlights. According to this testimony, plaintiff should have been able to have seen, as soon as he turned onto the Jewella road, the train across the track, or at least that distance.
*175 In the case of Louisiana Power & Light Co. v. Saia, 188 La. 358, 177 So. 238, 239, the Court said:
"In applying this provision of the statute, the courts have concluded that a motorist is held to have seen an object, which, by the use of ordinary care and prudence, he should have seen in time to avoid running into it, and that the driver of an automobile is guilty of negligence in driving at a rate of speed greater than that in which he could stop within the range of his vision."
Plaintiff relies on the case of Gaiennie v. Co-Operative Produce Company, 196 La. 417, 199 So. 377, as bringing him within the exception to the general rule. The Gaiennie case is one of the leading cases on the exception. However, in the case of Hogue v. Akin Truck Line, La.App., 16 So.2d 366, 367, this Court, through Judge Taliaferro as the author of the opinion, pointed out the inapplicability of the Gaiennie case and those of similar holdings to a situation such as existed in the Hogue case or in this case. Judge Taliaferro said:
"In the Gaiennie case it was held that due to exceptional conditions prevailing at the time and locale of the collision, plaintiff was not guilty of any negligence when he ran his car into a stationary truck on the highway. The facts were that plaintiff, while traveling on a concrete highway at a speed not in excess of forty miles per hour, met a string of cars with dazzling lights. He reduced his speed to twenty miles per hour and put on the dimmer, as the law requires, and when he had passed the last of said cars, there loomed before him, only a few feet away, the parked truck. The bed of the truck was three or four feet above the ground and the headlights when dimmed, cast their beams below it."
Astute and diligent counsel for plaintiff cite other authorities for the purpose of showing that the case at bar comes within the exception to the general rule. We deem it unnecessary to discuss in detail the holdings of those cases, for they present entirely different factual situations, and are thus distinguished from the case at bar, and some are at variance with the established jurisprudence of this state.
Our conclusion is, therefore, that plaintiff's negligence was the sole and proximate cause of the accident and the injuries and damages resulting therefrom. This would dispense with or make it unnecessary to discuss defendant's plea of contributory negligence since we have held that negligence has not been shown on the part of the defendant. However, in passing, we might say, if it could be considered that defendant's action constituted negligence, that would not avail plaintiff inasmuch as such would not be active but passive whereas plaintiff's negligence was active and the moving and proximate cause of the accident.
The judgment of the District Court is in our opinion correct, and is affirmed at appellant's cost.