PRICE, Judge.
Plaintiffs in this tort action seek damages from The Kansas City Southern Railway Company and the individual members of a train crew, for injuries sustained from the collision of an automobile and a freight train at the Norris Ferry Road crossing with the Kansas City Southern railway tracks just south of Shreveport.
Jerry W. Beal, the owner and driver of the automobile, seeks recovery for personal injuries, medical expenses, property damage and replacement automobile rental. He is joined by his wife, Virginia Beal, appearing on behalf of her minor child, Doug Fricks, a passenger in the Beal automobile, who is alleged to have sustained personal injuries in the accident.
In addition to the Kansas City Southern Railroad, plaintiffs joined as defendants the engineer, Dewayne C. Simmons, the conductor, J. B. Vascoe, and J. C. Penton, a member of the train crew.
The accident occurred at about 5:30 a. m. on February 26, 1972. Beal was driving his 1960 Chevrolet automobile northerly on the Norris Ferry Road, a two-lane blacktop rural route running from Wallace Lake toward the City of Shreveport. Five other persons were riding as passengers in the automobile with Beal, who was returning from an overnight fishing trip to Wallace Lake. It is undisputed the accident happened before daybreak and that light rain had fallen intermittently during the early morning hours, causing the roadway to be wet. The existence or extent of the presence of fog at the time is a disputed fact in the case.
Approximately 25 minutes prior to the accident a KCS freight train pulling 171 cars developed an air leak, causing the brakes to lock as the train was proceeding through the Norris Ferry Road crossing. The engine unit was estimated to be about 75 or 80 cars past the crossing at the time of the breakdown. A car by car inspection was started by the train crew to locate and repair the leak. The break in the air hose connection was found at about the fortieth car behind the engine and the repairs were completed in approximately 25 minutes. Just prior to the train starting to move, the automobile driven by Beal ran into a freight car in about the middle of the train which was blocking the crossing.
Plaintiffs contend the railroad and its train crew were negligent in blocking the crossing for this period of time at night under adverse atmospheric conditions without taking proper steps to warn approaching motorists.
Defendants contend the accident was caused solely by Beal’s failure to keep a proper lookout and in traveling at an excessive speed under the prevailing circumstances. Contributory negligence is plead alternatively against the claims of Beal. Defendant, Kansas City Southern Railway, filed a reconventional demand against Beal for the cost of repairs to the freight car damaged in the collision, and other related expenses.
The trial judge found no negligence on the part of the defendants and concluded the proximate cause of the accident was *512 the negligence of plaintiff in driving at an excessive speed under the circumstances. Plaintiffs have appealed from the judgment rejecting their demands and awarding damages in the sum of $141.42 to the Kansas City Southern Railway Company under its reconventional demand against Beal.
We affirm the judgment appealed from for the reasons discussed in the following paragraphs of this opinion.
In the absence of a statute or ordinance requiring such, there is no duty on the part of the railroad to provide a flagman or to give special warning by placing flares or fusees at a crossing unless there are unusual or extraordinary circumstances rendering the crossing a trap to unwary motorists. Rogers v. Williams, 172 So.2d 149 (La.App. 1st Cir. 1965); Senegal v. Thompson, 91 So.2d 865 (La.App. 1st Cir. 1956); Ramsey v. Louisiana & Arkansas Railway Company, 70 So.2d 171 (La.App. 2d Cir. 1954); Plummer v. Gulf M. and N. R. Co., 153 So. 322 (La.App. 1st Cir. 1934).
It is a question of fact to be determined in each individual case as to whether the circumstances surrounding the blocking of a crossing are such that the railroad owes the duty of providing special warning to motorists. This observation is also applicable to the determination of fault or contributory negligence of the motorist. Odom v. Hooper, 273 So.2d 510 (La.1973).
The reasons advanced by the trial judge for absolving the railroad and its train crew of fault are well taken and we quote with approval his discussion of this issue as follows:
“The first question is whether or not the Railroad was negligent under the circumstances existing at this particular time. This was a rural, not a contested area. The evidence shows that the crossing sign required of the railroad Was in place, and the photographs show that it was of a reflective type, and the question is whether or not this train crew was obligated to furnish any other protection at this crossing.
“The facts are that the train was approximately one hundred and seventy cars long — a very long train. On this occasion, there was some difficulty with one of the cars, the brakes on the wheels of one of the cars having been applied while they were in progress, and they were forced to stop at this particular place. The engineer and one brakeman were on the locomotive. One brakeman and the conductor were in the caboose. When the train stopped, the brakeman from the head end, the locomotive, started back to look for the trouble, and the brakeman on the caboose started forward for the same purpose to see if they could correct it. The brakeman from the head end, from the locomotive, reached the car with the dragging brakes first and corrected the situation to where the brakes would release, and he, then, started back towards the locomotive and the brakeman on the caboose started back to the caboose. This is the usual procedure, and then the train starts into motion as soon as the brakeman riding on the locomotive gets back to it. In this particular case, because of the location of the car in the train, the brakeman from the locomotive arrived at the place where the difficulty was first and corrected this and went back to the locomotive and the train was just fixing to start up again when struck. As a matter of fact, the air that operates the brakes on these cars in the train had been pumped up by the locomotive to where the brakes were released and, according to the conductor his train was ready to move when the 40th (sic) car was truck by plaintiff’s automobile, which ruptured the air-line on the car and the brakes were set on all of the cars and the train was again disabled.
“The crossing, according to the testimony of the engineer, was approximately *513 three-fourths of a mile from the caboose, and he estimated that it would have taken the brakeman from the locomotive from ten to fifteen minutes to walk back to this car that they were having the difficulty with and five minutes to repair the condition that existed, and then, of course, it would have taken him ten to fifteen minutes to get back to the locomotive, so this would have been approximately twenty-five minutes elapsed time, and this was the approximate time the conductor testified that the train had been stopped when it was struck.
“Neither of the brakeman (sic) ever got to the crossing. The brakeman that was riding on the locomotive came to the point of trouble before he reached the crossing, and the brakeman on the caboose never reached the crossing before the brakeman from the locomotive had repaired the condition, and he then started walking back to the caboose, so, just in the normal operation of the train, it was not practical nor required that either one of the brakemen go to this crossing and furnish any type of warning.
“Walking along the railroad right-of-way is, more different than walking along the street or sidewalk, and this accounts for the fact that it took these brakemen longer to get to the point where each stopped, which was before they reached the crossing, so we do not find any negligence in the operation of the train or in the actions of the train crew.”
We believe the evidence in the record sustains the trial judge’s opinion that the actions of the railroad crew were reasonable under the emergency circumstances which confronted them. Had the train made the emergency stop at such a position that the crossing would have been near the engine or the caboose, rendering it feasible for a crewman to have immediately given warning, is a different question and we do not find it necessary to express an opinion on factual variations not before the court at this time.
We are further in accord with the trial court’s finding that the cause of the collision was the excessive speed' of the Beal vehicle under the circumstances. Rain had fallen prior to the time of the accident and the blacktop was wet. Beal admits to traveling between 50 and 55 miles per hour prior to applying brakes.
The evidence shows Beal was very familiar with the crossing and that the crossbar warning sign required by statute was clearly visible to a motorist at night. Photographs in evidence show the marker to be easily discernible at night when the headlights of an automobile strike its illu-minized surface. Although plaintiff contends the evidence is insufficient to establish the markers were in the same place on the night of the accident as on a later date when measured by a civil engineer, we conclude this marker was approximately 100 feet from the crossing. Additionally, ihe evidence shows a department of highways sign 475 feet south of the crossing warning motorists of its presence.
Although Beal testified he had not seen the train at the time he applied his brakes, he admits applying them at about the point of the department of highways sign and skidding into the train. He contends he was unable to stop because of the presence of mud on the blacktop. Skidmarks measured by the investigating trooper indicate Beal’s vehicle skidded 300 feet prior to the collision.
We conclude, as did the trial judge, that these factors indicate Beal did not take reasonable precautions under the circumstances in approaching the railroad crossing and his negligence was the sole cause of the accident.
Appellants question the trial court’s action in awarding an expert witness fee to the civil engineer who testified on behalf of the defendants as they contend the evidence presented was not opinion evi *514 dence but merely attested to the facts relating to the measurement of certain distances which could have been given by a lay witness. This witness not only prepared plats of the crossing showing the position of the two warning signs involved, but further reflected the exact position of the nearest cluster of trees and other alleged obstacles to vision relating to the crossing. A second plat was prepared by the engineer to depict the comparative grade level of the crossing to the surface of the road at various intervals to rebut the allegations of plaintiffs that the grade level of the crossing rendered it more difficult to discover the presence of a motionless train in darkness. We consider this evidence to be beyond the scope of lay testimony and to warrant the award of an expert witness fee.
For the foregoing reasons the judgment appealed from is affirmed at appellants’ costs.