BOWES, Judge.
Defendant, Louisiana Department of Transportation and Development (hereinafter the Department), appeals from a judgment of the District Court in favor of Darlene T. Dupre and against the Department for $15,000.00, being it’s virile share (one-fifth) of the total award of damages due plaintiff. The other four defendants apparently settled with plaintiff prior to trial.
Plaintiff was severely injured when the car in which she was a guest passenger collided with a railroad train, owned and operated by the New Orleans Public Belt Railroad. The accident occurred at 3:30 a.m., September 30, 1973, at a grade crossing intersection on U.S. Highway 90 East (commonly known as Jefferson Highway) in the immediate vicinity of the Huey P. Long Bridge east traffic circle. The vehicle in which plaintiff was riding, being operated by Monroe J. Wolfe, Jr., was proceeding in an easterly direction on Jefferson Highway, in a steady rain, and had just started down the east side of the overpass over Clearview Parkway when, according to the plaintiff:
... well, right over the overpass ... going downhill and right when we got around that point, you could see something swishing, you know, and that’s when I hit him on the arm with my left arm and I told him, I said, ‘That’s a train. Stop.’ Well, by that time, he tried hard and he couldn’t stop, you know, we hit it.
The Louisiana Supreme Court, in addressing the question of negligence on the part of the Department, has stated:
It has been repeatedly stated that the department is not a guarantor of the safety of travelers but, rather, owes a *467 duty to keep the highways and its shoulders reasonably safe for non-negligent motorists. Liability based upon negligence is imposed when the department is actually or constructively aware of a hazardous condition and fails to take corrective action within a reasonable time....
The duty to maintain reasonably safe highways and shoulders extends to the protection of those people who may be foreseeably placed in danger by an unreasonably dangerous condition. Sinitiere v. Lavergne, 391 So.2d 821 (La.1980), Rehearing Denied.
In Laborde v. Louisiana Department of Highways, 300 So.2d 579 (La.App.3rd Cir.1974) writ refused 303 So.2d 182 (La.1974), our brothers of the Third Circuit expounded on the burden that a plaintiff must carry in order to prove the Department breached its duty of maintaining a safe highway and in order for liability to attach to the Department. The Court commented:
The department is liable for damages only when it is shown (1) that the hazardous condition complained of was patently or obviously dangerous to a reasonably careful and ordinarily prudent driver, and (2) that the department had notice, either actual or constructive, of the existence of the defect and failed within a reasonable time to correct it. Dupre v. Louisiana Department of Highways, 154 So.2d 579 (La.App.3rd Cir.1963); Mistich v. Matthaei, 277 So.2d 239 (La.App.4th Cir.1973); St. Paul v. Mackenroth, 246 La. 425, 165 So.2d 273 (1964).
See also Godwin v. Government Emp. Ins. Co., 394 So.2d 751 (La.App.3rd Cir.1981).
We agree with the principles laid down in the above-quoted authorities.
In attempting to establish negligence on the part of the Department, plaintiff relied on the testimony of Robert Lipp, who was qualified as an expert in civil engineering. Mr. Lipp testified that the distance from the top of the overpass to the crossing was 831 to 835 feet and that there was an “X” signal with a light 335 feet before the crossing. He further stated that his review of the police report (which was filed in evidence) of the accident indicated a 35 M.P.H. speed limit and that the flashing light signal was operating the night of the incident.
In Beal v. Kansas City Southern Railway Company, 291 So.2d 510 (La.App.2nd Cir.1974), the court states:
We are further in accord with the trial court’s finding that the cause of the collision was the excessive speed of the Beal vehicle under the circumstances. Rain had fallen prior to the time of the accident and the blacktop was wet. Beal admits to traveling between 50 and 55 miles per hour prior to applying brakes.
The evidence shows ... the crossbar warning sign ... was approximately 100 feet from the crossing. Additionally, the evidence shows a department of highway sign 475 feet south of the crossing warning motorists of its presence.
Although Beal testified he had not seen the train at the time he applied his brakes, he admits applying them at about the point of the department of highways sign and skidding into the train. He contends he was unable to stop because of the presence of mud on the blacktop. Skidmarks measured by the investigating trooper indicate Beal’s vehicle skidded 300 feet prior to the collision.
We conclude, as did the trial judge, that these factors indicate Beal did not take reasonable precautions under the circumstances in approaching the railroad crossing and his negligence was the sole cause of the accident.
The similarities between the Beal case and the case at bar are readily ascertainable, but what is more noteworthy are the differences. In Beal, one notes that the first warning sign was 475 feet from the crossing, the crossbar warning sign was 100 feet from the crossing, and there was a vehicle speed of 50-55 M.P.H. In the present case, it is noted that the top of the overpass (that point at which the crossing can first be seen) was over 800 feet from the crossing (almost twice the distance of the first warning sign in Beal), the “X” sign with the flashing light was 335 feet before *468 the crossing (over three times as far as the crossbar warning sign in Beal), and the posted speed was 35 M.P.H. (considerably below the 50-55 M.P.H. of the Beal vehicle).
Mr. Lipp testified that, according to his calculations, a vehicle traveling at forty miles per hour (the now-posted speed limit) would require 881 feet in which to stop under the then prevailing weather conditions. This court is convinced that this estimate is in error. Mr. Lipp’s testimony was devoid of any foundation upon which his conclusion was based and, although he did testify that he “looked into” the stopping distances of automobiles, he failed to state the authorities into which he looked. Additionally, nothing in the record indicates any special knowledge on the part of Mr. Lipp in the field of automotive braking and stopping. Accordingly, we are satisfied that the record is devoid of any adequate evidence to show that the respective distances of 335 feet and 831 feet do not give a vehicle traveling at forty miles per hour (or 58.67 feet per second) ample opportunity to come to a safe stop before reaching the railroad crossing.
The record shows that plaintiff failed to introduce any evidence that the crossing was in need of repair or that the signal lights were either not functioning or malfunctioning at the time of the accident. The only evidence introduced by plaintiff which could possibly support a finding that there was a design defect or a hazardous condition at the grade crossing, is Mr. Lipp’s calculations, without foundation, which we have rejected hereinabove, and a statement by Mr. Lipp: “If it [the overpass] was placed over the tracks, certainly we would have avoided this accident and it would have been a much safer condition.” Obviously, this statement is self-evident and could be made of any railroad crossing in the state.
In its defense, the Department introduced an accident diagram sheet covering the period September 30, 1971 through September 30, 1972. The sheet indicates that during this one-year period covered by the report there was only one accident occurring at the crossing in question. As the Department pointed out in the evidence it presented, Jefferson Highway is a heavily-traveled roadway, with approximately 50,-000 vehicles per day using the overpass and railroad crossing. The occurrence of only one traffic accident at the crossing in the period of one year strongly suggests that the area of the highway in question is not only reasonably safe but exceedingly safe for any lawful or proper purpose.
Accordingly, we are of the opinion that the evidence and testimony before us simply does not sustain a finding that the railroad crossing at which the accident occurred was “patently or obviously dangerous to a reasonably careful and ordinarily prudent driver”, which is necessary to hold the Department of Highways liable. God-win, supra.
Therefore, for the reasons assigned, the judgment of the District Court is reversed insofar as it relates to the Louisiana Department of Transportation and Development.
REVERSED.