This is a suit for the recovery of damages as the result of a truck-train collision. The case was tried before a jury which returned a verdict in favor of defendant. Judgment was signed in accordance with the verdict and plaintiff has appealed.
Despite the voluminous record there is comparatively little dispute with reference to the physical facts and circumstances connected with the accident.
At about 7:45 A.M. on July 13, 1946, plaintiff and one Pap Harper, a negro, both being employees of Mike Maniscalco, a truck farmer, were proceeding along Highway 20 toward Shreveport in a 1942 Chevrolet Pick-up Truck owned by Maniscalco and driven by Harper. The truck was loaded with green vegetables and the particular mission of plaintiff and Harper at the time was to convey the vegetables to the markets in the City of Shreveport.
At a point in Caddo Parish about 12 or 13 miles south of Shreveport, Highway 20 makes a right angled crossing of the main line track of the Texas Pacific Railway. South of this crossing, in the direction from which the truck was proceeding, the highway parallels the railway track for a distance of several miles. About 125 feet from the crossing the highway makes a banked inclined right curve up to the crossing which is made at a right angle, and upon the other side thereof the curve of the highway is reversed on a downward banked incline for a distance of about 125 feet before its course again parallels the railway right-of-way for another considerable distance in a northerly direction toward Shreveport. In other words, the crossing is made by means of the familiar S curve. The day of the accident was bright and clear, visibility was good, and the view of the railway track in either direction for a distance of miles each way was totally unobstructed. The crossing described is located at what is known as Robson, Louisiana, a little village settlement consisting of a store and two or three houses nearby, but the immediate vicinity is sparsely settled.
The testimony of witnessess establishes the fact that the Chevrolet truck driven by Harper was proceeding at a moderate rate of speed in a northerly direction toward Shreveport, that it entered the curve, and made the immediate approach to the crossing at a speed of some 5 to 10 miles per hour. As the front wheels of the truck passed over the near or west rail of the track the motor failed and the car stalled. Up to this moment neither plaintiff nor the driver had perceived the approach of defendant's regularly scheduled passenger train which was also proceeding north to Shreveport some 10 or 15 minutes behind schedule. But, as the car stalled, Harper, the driver, saw the train a very short distance away and called to plaintiff to jump. Plaintiff, for some unexplained reason, did not or could not open the door on the right side of the truck cab and jump out, but the driver opened the door on his side of the cab by reaching through the window, turning the handle from the outside and kicking open the door, whereupon he jumped and miraculously escaped unscathed. The locomotive of defendant's train struck the truck, and carried it for a considerable distance north along the right-of-way where it fell or was thrown to the left of the ditch. Plaintiff was extricated from the wrecked truck, suffering from severe injuries which form the basis for his claim for damages.
The testimony shows that at the time the locomotive struck the truck the emergency brakes had been applied, and the train, consisting of the locomotive and 11 coaches, was brought to a complete stop some quarter of a mile past the crossing.
1326 feet south of the crossing in question a whistle board is located immediately to the right of the railway track as a warning to the engineers of locomotives of the location of a crossing in order to permit them to sound the warning signals of whistle and bell. The testimony overwhelmingly preponderates to the effect that the whistle of the locomotive was properly sounded in the customary manner, which is indicated as being two long and two short blasts of the whistle. But it appears that the last short blast of a whisle is ordinarily held until the crossing has been reached, which gives the effect of two long, a short and a long blast. *Page 343 
There is a conflict of testimony on the point as to the ringing of the bell of the locomotive on this particular occasion, but, for reasons which became obvious later in this opinion, this point is unimportant.
Because of the death of the engineer who was in charge of the locomotive at the time of the accident, the fireman is the only member of the train crew, who was an eye witness to the accident, whose testimony was available on trial of this case. According to his testimony he saw the truck in which plaintiff was riding, about the time it entered into the curve approaching the crossing; that he thought the truck stopped before attempting to proceed across the rails, an impression which is easily reconciled with the actual fact because of the extremely slow rate of speed of the vehicle at the time; that he saw the truck stall on the track when the locomotive was some two or three hundred feet away and immediately warned the engineer to make a "big hold," which is railway parlance for an emergency application of the brakes. But, under these circumstances, it is, of course, obvious that the train which was, according to the preponderance of the testimony, proceeding at a speed between 50 and 55 miles per hour, could not possibly have been brought to a stop in time to avoid the collision. In fact, the uncontroverted testimony of experienced railway employees is to the effect that the actual stopping of the train, which took place approximately a quarter of a mile beyond the crossing, evidenced a good stop in consideration of the speed and the make up of the train.
One fact stands out with startling clarity, that neither plaintiff nor Harper, the driver of the truck, made the slightest effort to look in the direction from which the train was approaching at any time before the truck started on the track. It is true that plaintiff testified that the driver, Harper, looked before he made the attempted crossing of the track, but in the further course of his testimony it developed that this was a mere impression based on the fact that Harper at some undesignated time had told plaintiff he had looked. It is unnecessary to further discuss any testimony on this point because of the inescapable conclusion that if either of the parties had looked they would have seen.
Plaintiff's action is predicated upon eight specifications of negligence on the part of the defendant and its employees, which are itemized in his petition as follows:
(a) Failure to maintain flagman or proper mechanical devices at said intersection for warning the approach of trains,
(b) Failure to properly maintain crossing in good condition in accordance with statutory requirements,
(c) Operating said train at an excessive rate of speed, about 65 to 70 miles per hour,
(d) Failure to ring bell or blow whistle as required by law,
(e) Failure to keep said train under proper control,
(f) Failure to keep proper lookout,
(g) Failure to slow down or stop in time to avoid said accident,
(h) Operating said train in a careless and reckless manner in disregard of the rights of motorists crossing said intersection.
[1] A number of the above charges of negligence are conclusively disposed of by the evidence. Plaintiff has completely failed to support the specifications comprehended under items (d), (e), (f), (g), and (h) above. On the contrary the great preponderance of the evidence justifies us in concluding that the warning signals were properly given; that the train was under as much control as is required by law under the facts and circumstances of the case; that a proper lookout was kept; that there was no failure on the part of the operators of the locomotive to slow down or stop in time to avoid the accident since this would have been impossible, and that the train was not operated in a careless or reckless manner in disregard of the rights of motorists crossing the intersection.
[2] Nor is there anything in the record which sustains plaintiff's charge that at the time of the accident the train was being operated at an excessive rate of speed *Page 344 
of 65 to 70 miles per hour. While the testimony on this point is of necessity vague and uncertain, we think the most reliable evidence is found in the testimony of the fireman of the locomotive to the effect that the speed of the train at the time was about 55 miles per hour. But, however this may be, it is evident that the speed of the train, whether it was 50 or 100 miles per hour, was neither a proximate nor a contributing cause of the accident.
[3] No very serious effort was made on the part of counsel for plaintiff to press the claim of negligence on the ground of the failure to maintain flagmen or mechanical warning devices at the intersection in question, as set forth in item (a) above. There is no law, nor, indeed, is there any practical reason which would require the maintenance of flagmen or mechanical warning devices by a railroad at open country crossings in sparsely settled rural areas.
[4] This leaves for consideration the only remaining specification of negligence which bears upon the alleged failure of the defendant to maintain its crossing over the highway in good condition. It is to this point that counsel for plaintiff, in brief and in oral argument, directed the greater part of their attention.
The theory of the arguments advanced in behalf of plaintiff with reference to this particular charge of negligence is predicated upon the claim that defendant had permitted its crossing at the point of the accident to fall into such a state of disrepair as to constitute a danger, a menace and a hazard to vehicular traffic, and, by implication, that the stalling of the truck in which plaintiff was riding at the time was caused by the particular condition of the crossing.
We think it suffices to say that plaintiff utterly failed to prove this premise. The testimony clearly preponderates in favor of defendant to the effect that the crossing was in good condition and except for a slight roughness caused by the wearing down of the platform between the rails there was no indication of any impediment to vehicular traffic. The record is plain and uncontradicted on the point that no vehicle at any time either before or since the accident was known to have stalled on this particular crossing or to have failed to negotiate the same without inconvenience or discomfort, to say nothing of danger.
[5, 6] in deference to the zealous efforts of counsel for plaintiff in this case, we have gone to some unnecessary pains in considering in more or less detail the several charges of negligence on the part of defendant that have been presented by plaintiff. We say unnecessary because of our conclusion that the proximate and only cause of this accident was the gross, inexcusable and inexplicable negligence and carelessness of both the plaintiff and the driver of the truck. We do not recall any case in which this fact has been so plainly and uncontrovertibly established.
Plaintiff and the truck driver lived in the neighborhood of the village of Gayles, Louisiana, some two or three miles south of the situs of the accident and from which point they had entered upon the mission which was taking them to Shreveport by way of Highway 20. Both of these parties lived in reasonably close proximity to the railway; both of them knew that the through passenger train was due at or about the time they were traveling parallel to the tracks and attempting to negotiate the crossing. Either of them could have seen the approaching train for a distance of miles to the south if they had looked, and neither of them made any attempt up to the time the truck actually stalled on the track to determine whether or not a train was approaching from the south. The most casual glance in a southerly direction by either plaintiff or the driver of the truck would have disclosed a view of the approaching train.
The attempt is made on behalf of plaintiff to argue that there was no duty to look on the part of plaintiff. This position is clearly untenable.
It is well established that there is an independent duty on the part of a passenger or guest in a vehicle about to traverse a railroad crossing to use ordinary and reasonable care and precaution in the interest of his own safety. Martin v. Yazoo *Page 345 M. R. Co., La. App., 181 So. 571; Lockhart v. Missouri Pac. R. Co., La. App., 153 So. 577.
For the reasons assigned the judgment appealed from is affirmed at appellant's cost.
KENNON, J., absent.