AYRES, Judge.
This is a suit by husband and wife seeking recovery for damages to the community autornobile and medical' expenses on the part of the former, and for personal injuries sustained by the latter, in an accident occurring about 7 o’clock p. m. on November 13, 1949, wherein the family automobile driven by the husband, accompanied by the wife, collided with a’train of the defendant parked across Louisiana State Highway No. 38, a concrete paved highway near Keatchie, DeSoto Parish, Louisiana. The trial’judge, for written reasons filed in the record, rejected plaintiffs’ demands, and by a devolutive appeal on. their' behalf, the matter is before this .Court
Plaintiffs, make .the usual allegations of vigilance and diligence on the part of the husband as the driver of the automobile, and allege that, as they proceeded down grade to the railroad crossing where the tracks were iñ a cut or depression and the highway slopes toward said tracks from either direction, the defendant had brought its train to a standstill with a fiat car extending across the highway; that defendant failed to place Hares or any other warning devices or to station a flagman at the crossing to warn the traveling public of the train’s presence on said track, which fault, together with the shape and color of- said flat car, made it difficult to see said alleged obstruction at nighty and that the weather was misty or foggy, which conditions made it necessary that the defendant take extra precautions to warn the public at the crossing, and, therefore on that account, plaintiffs 'failed to see said train in time to' slow down and stop and avoid the collision.
Defendant denies all of plaintiffs’ allegations of negligence and alleges that the driver was grossly negligent in failing to *177 stop at the railroad crossing as required by law, or in failing even to approach said crossing with caution, being familiar with the highway and knowing’ that the railroad crossing was there. In the alternative, defendant- pleaded -.contributory- negligence on the part of both plaintiffs in bar. of their right to recover herein.-
The evidence in this case disclosed a 'factual situation very similar to the case of Julian C. Ramsey v. Louisiana & Arkansas Ry. Co., La.App., 70 So.2d 171. The'law applicable to that cáse is pertinent to and controlling herein.
On the day in question, a . freight train of defendant, consisting of 64 assorted freight cars, was on. its regular run between Shreveport, Louisiana, and, Lufkin, Texas. Before reaching . the highway crossing, the train slowed down and the brakéman riding the engine alighted at the crossing and planted a fusee on the crossing, but somewhat to plaintiffs’- left side of the highway, and on the opposite side of the train from which plaintiffs Were approaching. The locomotive continued to the water tank to take water, as was usually and customarily done. In stopping to take water, the highway was about equidistant from the locomotive and the ■ caboose. There were three flat cars coupled together in the middle of this train, the middle one of which extended across the highway.
' The highway, after leaving Keatchie toward Shreveport, makes a' sharp turn t'o the right and then continues át a slight decline to a- point at or near' the railroad tracks, and then rises slightly as it proceeds beyond the railroad tracks, all of which, however, for at least a few hundred yards on either side of the railroad tracks, is straight. The record does not reveal the exact distance the highway is straight on either side of the railroad. The railroad itself was generally level, with no cut or embankment or other obstruction that would affect or obstruct a view of the track at the crossing, or on either side of the crossing, at night within the range of the illumination of the headlights of an automobile. In addition, the fusee, although on the opposite side of tiie flat car, illuminated the surroundings and could be- seen at least for a distance exceeding the. length of the train, which was approximately one-half mile. This fusee gave out a ' red glow which could' be seen for a considerable distance, even, though the fusee itself was 'obstructed to view. The driver saw this illumination or glow for some distance down the highway, and according to his testirno-ny, mistook it for a light or bonfire at a house by the side of the road. .The flare evidently produced a silhouette' of outline of the freight car. The flat car presented to view no inconsiderable amount of bulk, extending across the highway, the side o-f the. flat car having an approximate width or depth of three feet. On‘the side of the freight car facing the driver were large white letter’s showing the initials and numbers. “S.S.W. 3008”, and the words: “St. Louis Southwestern”. Moreover, the trucks and’ double sets of car wheels immediately to the left of the point of impact on the flat car also presented a considerable amount of bulk, which should have been seen by. the plaintiff and, indeed, which he says he saw immediately prior to the collision, looming up in front of him.
On the occasion of this accident, plaintiff and wife were returning to Shreveport from Houston. There were no obstructions to plaintiffs’ view; the'highway was straight; the night was clear; and the weather conditions were excellent and completely free from anything that affected visibility. Therefore, the atmospheric conditions did not make it necessary for defendant to place flares or fusees or-other warning devices at this crossing, although the evidence shows that as a matter of precaution, it did so, .which is commendable. There appears to be no question or reason why the plaintiff husband could not and should not háve seen the. flat car on the crossing in ample time to have slowed down and stopped, if necessary, to avoid running into the train.
Under deposition, Mr. Dewey J. Watson, a teacher residing in the State of Texas, age 32 years, who arrived at the scene of the accident only minutes follow *178 ing its occurrence, testified that he had been driving SO miles per hour since negotiating the curve prior to reaching the crossing; thaf he noticed an unusual occurrence at the railroad crossing when about 100 yards away, and in plenty of time to stop; that he could recognize the obstruction as a railroad car when 100 yards away; that the red flare gave an outline of the railroad car and the light or glow therefrom did not affect his vision. The plaintiff driver had an equal opportunity to see and observe the presence of the train as Mr. Watson did. It was his mandatory duty to have done so. A motorist is held to have seen an obstruction which by the use of ordinary care and prudence he should have seen in time to avoid running into it, and the driver of an automobile is guilty of negligence in driving at a greater rate of speed than that in which he can stop within the range of his vision. Louisiana Power & Light Co. v. Saia, 188 La. 358, 177 So. 238, and the authorities therein cited.
In the case of Squyres v. Baldwin, 191 La. 249, 185 So. 14, Domite v. Thompson, La.App., 9 So.2d 55, and Arnold v. Illinois Central Railroad Co., 32 So.2d 76, three of the more recent cases on the subject, the jurisprudence is well established to the effect that the presence of a train of cars at a crossing is sufficient notice of obstruction and of danger, and that the railroad company is not bound to give any further warning as to the presence of said train unless atmospheric conditions are such or the construction of the highway or railroad were such that the train crew knew or should have known that additional warning was necessary for motorists. In this case, no unusual weather conditions prevailed, as in the Squyres v. Baldwin and Arnold v. Illinois Cent. Railroad Co. cases. In the case of Domite v. Thompson, supra, the court, after reaching the conclusion that the crossing was free of unusual conditions at the time of the accident of such character as to materially interfere with visibility, said [9 So.2d 59] :
“This conclusion brings the case squarely within the general rule that the presence of a train across a highway is adequate notice and warning to motorists that the road is blocked. The rule is also well established that a motorist is required for his own safety and protection, if for no other reason, to maintain such rate of speed and lookout as will enable him to' stop his vehicle within the distance illumined by its lights. This rule, a safe and sane one, when observed, serves to avert hundreds of accidents which would certainly occur but for such observance.”
Counsel for appellants have, in brief, cited many authorities from this and other jurisdictions, which the Court finds inapplicable to' this case as involving facts and circumstances differing from those at issue here, or not controlling as being in conflict with the jurisprudence of this state. It would serve no useful purpose to prolong this opinion by differentiating those cases from the present one, which differences are apparent.
For these reasons, the Court is of the opinion that the evidence not only fails to establish negligence on the part of the defendant, but on the contrary, that the proximate cause of the collision was due to the negligence of the plaintiff as driver of his automobile, who was not keeping a proper lookout.
The judgment of the lower court rejecting plaintiffs’ demands is, in our opinion, eminently correct, and it is affirmed at appellants’ costs.