REGAN, Judge.
Plaintiff, Allen Wyatt, instituted this suit against the defendant, Public Belt Railroad Commission for the City of New Orleans, endeavoring to recover $585.07, representing personal injuries and property damage, which he incurred when a switch engine operating on a spur track which traversed the roadway of the 4200 block of Florida Avenue collided therein with his vehicle at 11:50 p. m. on May 4,1959.
Defendant answered and denied that it was negligent and alternatively pleaded the contributory negligence of plaintiff and that he possessed the last clear chance to avoid the accident.
From a judgment awarding plaintiff $185.07, the defendant has prosecuted this appeal.
During the course of the trial, plaintiff abandoned his claim for personal injuries; therefore, this litigation is confined to the sum of $185.07, representing property damage to his automobile.
*299 The record reveals that the defendant maintains a section of lead track that crosses Florida Avenue near Law Street, curves gradually for approximately 50 feet, and from that point runs parallel to the Florida Avenue roadway for approximately 160 feet, the nearest rail running about eight feet from the curbing of this roadway; then it gradually angles for a distance of 70 feet between the curbing and the track parallel thereto before entering the roadway of Florida Avenue diagonally; it then crosses and continues toward the Florida Street Wharf. It was at the track crossing last described that the collision between plaintiff’s automobile and the switch engine occurred on a dark night.
Plaintiff testified that he was driving his automobile in Florida Avenue in an uptown direction, moving at a speed of about 25 to 30 miles per hour. He initially noticed the light of the switch engine when he was 100 feet away and it was moving toward him on the tracks that parallel or appeared to parallel the roadway. When he was approximately eight feet from the track crossing he suddenly became aware of the fact that the engine was actually turning into the roadway; he immediately endeavored to apply his brakes and avoid the engine; however, both the elements of time and distance militated against the success of this effort. His vehicle was struck almost amidships by the “grab rail”, which is the outermost part of the switch engine. In the course of the trial below plaintiff was shown a picture of the tracks at the situs of the accident and in explanation thereof he asserted that the curve therein from the parallel track to the roadway was so gradual that on a dark night, with no street lights to aid his vision, it appeared to be continuing parallel to the roadway in which he was traveling, rather than entering therein. He related that there were no warning signals at the crossing of any sort and the pictures reveal that there is no grade at the point where the tracks traverse the roadway. After the impact plaintiff moved about 50 feet before stopping his automobile and then he walked back to the situs of the collision.
The defendant’s version of the accident, as is to be expected, differs radically. Five crew members, who were operating the engine when the collision occurred, stated that they noticed the headlights of plaintiff’s automobile approaching the track and estimated the speed of his vehicle between 40 and 50 miles per hour. They laboriously insisted that the engine was stopped when the automobile was one half block away with the rear of the engine protruding into the roadway at distances estimated by various members of the crew between several inches to several feet.
They, as usual, emphasized that the engineer was sounding bells and whistles prior to the collision and that a switchman was preparing to alight from the engine and place fuses in the roadway to warn approaching motorists of danger as the engine prepared to cross the roadway; however, he did not have time to do so before plaintiff’s automobile reached the crossing, swerved to the left, then swerved back toward the engine and sideswiped it. The crew uniformly insisted that the plaintiff traveled more than 250 feet before his vehicle was brought to a stop.
Counsel for plaintiff contends that the trial court correctly found as a fact that the defendant’s negligence in moving the engine into the roadway without first adequately warning approaching traffic was the proximate cause of the accident and, therefore, the judgment rendered in favor of the plaintiff was correct.
Defendant, on the other hand, asserts that the evidence preponderates to the effect that the engine had stopped and projected only a short distance into the roadway. It insists that plaintiff’s negligence was exemplified by his failure to cautiously approach the crossing and then ascertain that he could traverse it safely. Counsel points out that the law imposes no duty upon a railroad to provide signals at a crossing succinctly summarized by the following *300 statement emanating from the court in the case of Aaron v. Martin:[1]
“The general rule of law is that a railroad company is not required to station a flagman at a crossing to warn approaching motorists of the blocking of the crossing, nor to place lights or other signals at such crossing for that ' purpose in the ordinary and usual switching operations of such railroads, ‘ unless there are such unusual and dangerous conditions at such crossing as to make such precautions necessary.”
The validity of the foregoing general rule[2] is not disputed; however, an exception thereto has been recognized in the jurisprudence to the effect that at crossing possessing unusual and dangerous characteristics, there is a duty imposed upon the railroad to use adequate signalling devices to warn the motorist of impending danger.[3]
The question posed for the trial court’s consideration was whether the evidence preponderated to the effect that the crossing in question was so inherently dangerous as to bring it within the exception above stated.
The trial judge obviously concluded that the engine was slowly moving into a roadway which possessed dangerous characteristics without adequate warning having been afforded to the motorist and, therefore, this negligence was the sole cause of the accident.
The only question posed for our consideration is whether that finding of fact is so erroneous and unsupported by the evidence as to warrant a reversal by us.
Defendant’s crew obviously considered this a dangerous crossing, for they uniformly agreed that it had been the intention of the switchman to place fuses in the roadway to warn approaching automobile traffic of the engine’s presence therein, but he was unable to do so before the collision.
Plaintiff’s testimony is not disputed to the effect that the engine appeared to be traveling parallel to the roadway and continuing in a direction opposite to that in which he traveled and that the gradual turn of the curve created the illusion that the engine was proceeding along the track bordering the roadway rather than crossing it. This statement is substantiated by pictures of the scene introduced in evidence.
The whole tenor of the record leads us to the inevitable conclusion that the defendant was negligent in moving its engine into the roadway, which possessed unusual or dangerous characteristics, when the crew knew that an automobile was approaching, without first placing fuses therein to warn oncoming traffic. This negligence was the proximate cause of the accident.
Defendant’s plea that the plaintiff possessed the last clear chance to avoid the accident is untenable. It is conceded that the law imposes a duty on a person to avert peril when another imprudently places himself in a hazardous position, but this is true only when he observes or should have observed the danger in time to avoid it. The *301 record fails to disclose that this opportunity was afforded plaintiff prior to the collision.
For the reasons assigned, the judgment appealed from is affirmed.
Affirmed.
JANVIER, J., absent, takes no part.

. La.App.1936, 167 So. 106, 107.

. In determining what is negligent conduct we have remarked on several occasions that there is no fixed rule; the facts and evironmental characteristics of each case must be considered and treated individually in conformity with the true civil law concept. Judicially we are tending more and more toward an appreciation of the truth that, in the last analysis, there are few absolute rules of negligence; there are principally standards and degrees of negligence for the reason that no one is so gifted with foresight that he or she could anticipate every possible legal cause for personal injuries or property damage and prescribe the proper rule for each.

. Plummer v. Gulf M. & N. R. Co., La.App.1934, 153 So. 322; Ramsey v. Louisiana & A. R. Co., La.App.1954, 70 So.2d 171; Smith v. Texas & N. O. R. Co., La.App.1954, 70 So.2d 175; Senegal v. Thompson, La.App.1956, 91 So.2d 865.