YARRUT, Judge.
Defendant appeals from a judgment for $975.00 in favor of Plaintiff, for personal injuries suffered by Plaintiff in a collision between Defendant’s freight train and an automobile driven by Plaintiff, in the intersection where the railroad track diagonally crossed the State highway. Plaintiff answered the appeal asking for an increase of the judgment to $2500.00.
The collision occurred on November 10, 1958, about 7 P.M. It was dark but clear.
Plaintiff charges Defendant with negligence in not having the “stop” and “railroad crossing” signs at the intersection, and in failing to blow the whistle and ring the bell when 300 yards from the intersection, as required by State law, LSA-R.S. 45:561, 45 :S62.
Defendant denied all allegations of negligence and, alternatively, plead contributory negligence of Plaintiff, in that he was travelling at an excessive speed; had his headlights on low beam; the windows of his automobile closed; and failed to stop at the intersection as required by State law, LSA-R.S. 45 :563.
Plaintiff was proceeding north on La. Highway No. la few miles north of Braithwaite, Plaquemines Parish. This highway has two paved lanes, located on the east bank of the Mississippi River. Between Braithwaite and Poydras Junction (St. Bernard Parish), Defendant’s tracks cross the highway at four different locations. The collision occurred at the second crossing located about a half mile north of the Braithwaite wharf crossing. South of this crossing, Defendant’s tracks are located about 80 feet east of the highway, and run in a straight line parallel to the highway for a considerable distance. There were no obstructions, trees or weeds between the tracks and highway at or near this location for a considerable distance south of the crossing. At the crossing, and with respect to Plaintiff’s approach, De *475 fendant’s tracks cross the highway at a diagonal or 45-degree angle, in a northwesterly direction, and continue north on the west side of the highway parallel thereto, about the same distance apart of 80 feet.
Plaintiff was travelling about 42 miles per hour. The speed limit posted by law was 45 miles. Defendant’s train (a diesel •engine towing 15 cars) was also proceeding north at a speed of 10 to 15 miles per hour. The headlights of Plaintiff’s automobile were on low beam, and the headlight of the locomotive was burning. All windows on Plaintiff’s automobile were closed except 'the front window on his left.
The State Highway Department was repairing the highway near the crossing, and had temporarily removed the railway warning “stop” and “crossing” signs. Hence, on the night of the collision there were no “stop” or “crossing” signs posted nor any ■other fixed warning signals. As Plaintiff approached the crossing he saw something ■dark “loom up” on the right-hand side of the road. When he realized it was a train, he immediately applied his brakes, but to no avail. His automobile struck the locomotive toward the middle rear on its left .side.
The engineer and other members of the train crew testified the engineer gave the usual crossing whistle and bell signals as Plaintiff’s vehicle approached, and the engineer turned on the inside cab light so Plaintiff could see the engine approaching.
In rendering judgment for Plaintiff, the District Court gave reasons, inter alia, as follows:
“A person riding North on the highway finds himself overtaking a train going in the same direction about fifty feet parallel to the highway and as he nears the head of the train, the engine suddenly turns towards the highway and starts to cross over in front of the driver from his right hand side. The only avenue left open to him is to apply his brakes and attempt to stop.
“Much has been said by defendant railroad as to the lights on the train. All defendant’s witnesses were riding in the cab and there is no evidence in the record that this train had any lights on the rear to attract anyone’s attention who was overtaking the train. The headlight would shine straight ahead until the engine made its short forty five degree angle turn into the highway. At that time it would be less than fifty feet away from the driver at this point (the highway right-of-way of sixty feet adjoins the railroad’s right-of-way of thirty feet). The sudden appearance of the engine in the highway right-of-way is startling to say the least.
“To a person as unfamiliar to the road situation as was Harry Mehlsen on the dark November night this accident occurred, the Court considers this railroad crossing to be a trap from which he could not extricate himself.
“The Court can find no contributory negligence on the part of plaintiff, Harry Mehlsen, and must therefore give him judgment.”
Plaintiff (age 41) was port captain for the Dalton Steamship Company and was returning from an inspection at Braith-waite. Only on one previous occasion had he made the trip to Braithwaite.
The engineer of the train had 48 years experience as a railroad man, and 20 years as an engineer.
The train crew knew the “stop” and “crossing” signs had been removed by the Highway Department; that the track was on a level with the highway; and that the train had to make a 45-degree northwesterly turn to cross the highway (the same direction Plaintiff was travelling). Since Plaintiff’s automobile struck the rear of the diesel engine pulling the 15 cars, it would indicate they reached the intersection about *476 the same tíme. The engineer gave this account under cross-examination:
“Q. What I am trying to find out is where was your locomotive with respect to the highway when you first saw this car?
“A. When I first saw him?
“Q. Yes.
“A. I was heading right over the crossing. I was a distance from him.
“Q. You were heading on the crossing?
“A. Yes, the first thing, when he was bouncing up and down—
“Q. That’s the first time you saw him?
“A. Yes, you can’t help but see him. He come right on me fast.
“Q. You didn’t see him before as you were going parallel to the road? You didn’t see the car then?
“A. When I was parallel to the road?
“Q. Before you got to the crossing, you didn’t see him?
“A. When I hit the crossing I spied him coming, yes. I put the cab light on so he could see me.
“Q. Did you see him before he reached the crossing or not ?
“A. Before he hit the crossing?
“Q. Yes.
“A. No, when I hit the crossing, I seen him coming.
“Q. That’s the first time you saw the car coming?
“A. Yes, sir. * * *”
The State law (supra) provides that the railroad must provide a whistle and bell, which must be blown and rung at not less than 300 yards from the point it crosses over any highway or municipal street, and both must be sounded continuously until the crossing is passed; and that the railroad must provide sign boards of certain size and distance from the track with the lettering “Louisiana Law Stop.”
Under the testimony of its trainmen, the railroad was shown to be guilty of not having given audible signal of the train’s approach until within 60 or 70 yards of the crossing. Under the statute 300 yards notice must be given. In Smith v. Texas & Pac. Ry. Co., La.App., 189 So. 316, it was held that the failure of the train to comply with the statute requiring ringing of bell or blowing of whistle 300 yards from crossing is gross negligence; and that 300 yards is the minimum distance during which the warning must be continuously given until the train has completed its crossing. The railroad was then negligent in failing to give audible signal of its approach, and in failing to stop the train before entering the highway although the engineer knew or should have known that the Plaintiff was approaching. While Defendant’s train crew cannot be charged with negligence in the removal of its signs by the Highway Department, they were charged with knowledge of their removal and that casual motorists would thereby be denied proper warning of the crossing.
With the duty imposed, the engineer testified he did not turn on the cab lights until) he saw Plaintiff’s headlights and realized Plaintiff’s automobile was right upon him, though the 80-foot space between the tracks and highway was clear; that he was driving between 10 and IS miles per hour and could stop in 20 feet; and that he did not look southward down the highway as he-approached the intersection. Wyatt v. Public Belt Railroad Comm. for New Orleans, La.App., 121 So.2d 298; Stelly v. Texas. & N. O. R. Co., La.App., 49 So.2d 640;. Guidry v. Texas & N. O. R. Co., La.App.,. 20 So.2d 637; Ortolano v. Morgan’s L. & T. R. & S. S. Co., 109 La. 902, 33 So. 914; 15 La.L.R. 171.
*477 In the case of Hymel v. Texas & New Orleans Railroad Company, 145 So.2d 138, recently decided by this Court, the railroad was held not negligent because the motorist suddenly drove onto the track from a side road concealed from view, notwithstanding the legal signs to “stop” and “railroad crossing” were there to warn him, and the track was on an embankment. Here, the whole area was in full view of the engineer, and there were no warning signals or signs other than the belated cab light, whistle and bell. The headlight on the train, travelling in the same northerly direction as Plaintiff, though parallel but 80 feet apart, could hardly be visible until it made the diagonal swerve to cross the highway, when only 80 feet away.
We agree with the findings and conclusions of the District Court that the crossing at the time was, in effect, a “trap” known to Defendant’s crew but not to Plaintiff, and the Defendant’s negligence, as set forth above, was the sole and proximate cause of the collision. On the question of quantum:
On the day after the accident, Dr. W. A. Roy diagnosed Plaintiff’s injuries as a contusion of the top of right shoulder over the acromioclavicular joint with swelling and pain; and reported that Plaintiff was suffering pain at night with his shoulder and could not sleep on his right side, as he had been accustomed to doing; that Plaintiff made 19 visits to his office, 16 of which were for physical therapy treatments, the last of which was on January 7, 1959.
In a later report, Dr. Roy stated that Plaintiff had suffered a “separation” at the joint; that he was partially disabled for a period of twelve weeks; for which he was paid $118.50 by Plaintiff’s workmen’s compensation insurer.
Plaintiff continued working regularly. As captain of the port, he was not required to perform any physical labor; hence, he was able to perform his duties for his employer. He took time off only for physiotherapy treatments. Plaintiff testified that he was unable to perform many of his duties without pain, and experienced some pain and discomfort in his right shoulder until March 1959, four months after the accident.
In view of the allowances for comparable personal injuries in the cases cited below, we find no fault with the quantum of $975.00 allowed by the District Court. Woodard v. Grain Dealers Mutual Ins. Co., La.App., 131 So.2d 614; Johnson v. Delta Fire & Casualty Co., La.App., 102 So.2d 268; Fabre v. Grain Dealers Mutual Ins. Co., La.App., 99 So.2d 380; Vest v. State, Through Department of Highways, La.App., 90 So.2d 896.
For the above and foregoing reasons, the-judgment of the District Court is affirmed.. Defendant to pay costs in both Courts.
Affirmed.