REID, Judge.
Plaintiff Donald N. Rogers filed this suit against Virgil Williams, his insurance carrier American Automobile Insurance Company, Jahncke Service, Incorporated, Flint Sand and Gravel Company, Inc., the Feli-ciana Eastern Railroad Company and the Employers Liability Assurance Corporation, Ltd., the insurer of the last three named defendants. The suit is for damages sustained as a result of an accident, whereby a truck owned and driven by Virgil Williams, in which Donald N. Rogers was a guest passenger, ran into a gravel train owned by the Feliciana Eastern Railroad Company and owned and operated by Jahncke Service Inc., and/or Flint Sand and Gravel Com *150 pany, Inc. These three companies Jahncke Service, Inc., Flint Sand and Gravel Company and Feliciana Eastern Railroad Company were owned by the same people and it was stipulated in the record that if there were judgment to be rendered it would be against all of them, and their insurers.
The accident happened on December 21, 1959 about 6:30 P.M., which was after dark. Plaintiff was invited to go hunting on the afternoon of December 21 with Virgil Williams, with whom he worked as a plumber’s helper. The two were traveling in a truck belonging to the said Williams. After hunting along the Amite River and in the woods east of Clinton and north of Bay-wood they were proceeding on Highway 63 toward home, or toward Baywood where defendant Williams lived. About a mile north of the intersection of Highway 37 and Highway 63, on said Highway 63 there is located a railroad, crossing said Highway which is used primarily to haul gravel from the gravel pit on, or near, the Amite River and Slaughter, Louisiana where the railroad connects with the Y & M. V. Railroad.
Plaintiff claims the accident was caused by negligence, first of Williams because he was driving the truck too fast under the circumstances, and did not keep the proper lookout and did not see the train across the highway, and second, the negligence of Jahncke Service, Inc., Flint Sand and Gravel Company, and Feliciana Eastern Railroad Company, in that they did not have any warning signals, lights or flares which would warn traffic that the train was across the highway.
Prior to the trial the suit as against Virgil Williams and American Automobile Insurance Company was settled for $1350.00 and a limited partial release was executed in their favor. It was stipulated in the record that any judgment against the remaining defendants should be credited with $1350.00 paid by Williams and his insurance carrier in the event the other defendants were held liable.
The case was tried before Honorable Jim W. Richardson, who at the time was sitting as Judge-ad-Hoc for the last. Judge Woodrow W. Overton, who had died.. He signed a judgment on March 27, 1961 rejecting plaintiff’s demands as against the remaining defendants in the suit and dismissed suit at plaintiff’s cost. Subsequently plaintiff filed application for rehearing, and' a new trial which was heard before Judge John R. Rarick, who had been elected Judge of the 20th Judicial District Court in the meantime. On April 4, 1964 Judge Rarick signed a judgment rejecting and overruling the motion for a rehearing and/or a new trial.
Plaintiff-appellant herein then brought a devolutive appeal from this judgment.
The issue is factual and there is very little in dispute. The Railroad Company had loaded the train with some 28 to 30 cars with gravel and were proceeding in a westerly direction toward Slaughter. The cars were known as gondola or flat cars and after some seventeen cars had passed the crossing Williams’ truck crashed into the eighteenth gondola causing the wreck. The engineer’s testimony is that he blew the whistle when he crossed the highway and when he looked back he could see the lights of the Williams truck coming, and blew his whistle again. The Williams truck was proceeding in a general westerly direction at a speed, according to Williams, of 40 to 45 miles an hour, but according to the statement of James E. Goings the speed was between 40 to 60 miles an hour. He was traveling at such a speed that when he finally saw the train across the highway and applied his brakes he skidded 156 feet. He turned left just before hitting the train in order to avoid a head-on collision, and the right side of his truck struck the rear steps of the eighteenth gondola, and plaintiff received the injuries complained of, namely a laceration over the eye, a mild cerebral concussion and brush burns, but no internal injuries. Rogers was taken to the Clinton Infirmary where he remained from December 22 through December 26,1959, returning *151 ■on the 28th and at various times through the month of January. Inasmuch as we are going to dispose of this matter on the question of liability there is no need for any further discussion of plaintiff’s injuries.
There were definitely no flagmen at the •crossing, and no light, or signal, placed by the railroad to warn approaching traffic on the highway from either direction, the only warning signal being a cross-bar showing a railroad crossing and a sign placed on either side of the highway with the wording “Louisiana Law Stop.” Williams testified lie knew the railroad crossing was there and that he passed that way three or four times a year. Rogers stated that he was not familiar with the location, although he ad•mitted he passed over the crossing that -afternoon when they started on the hunt.
The general rule in regard to warnings over railroad crossings is stated by this Court in the case of Senegal v. Thompson, La.App., 91 So.2d 865, in the following •words:
“The general rule, as established by the jurisprudence of this State, is that in the absence of special statutes or •ordinances a railroad company is not required to station a flagman at a crossing to warn approaching motorists •of the fact that the crossing has been blocked or occupied by a train, nor to place lights or other signals at such ■crossing for that purpose, unless there are such unusual and dangerous conditions at the crossing to make such precautions necessary. Plummer v. Gulf M. and N. R. Co., La.App., 153 So. 322; Aaron v. Martin, La.App., 167 So. 106; Domite v. Thompson, La.App., 9 So.2d 55; Ramsey v. La. and A.R.R. Co., La.App. 70 So.2d 171; Smith v. Texas & N. O. R. Co., La.App., 70 So.2d 175.”
In the case of Alanza v. Texas and P. Ry. Co., La.App., 32 So.2d 341 our ¡Brothers of the Second Circuit held:
“There is no law, nor, indeed, is there any practical reason which would require the maintenance of flagmen or mechanical warning devices by a railroad at open country crossings in sparsely settled rural areas.”
It is well established that there is an independent duty on the part of a passenger, or guest, in a vehicle about to traverse a railroad crossing to use ordinary and reasonable care and precaution in the interest of his own safety. Alanza v. Texas & P. Ry. Co., supra. See also, Martin v. Yazoo & M. V. Ry. Co., La.App., 181 So. 571; Lockhart v. Missouri Pacific Ry. Co., La.App., 153 So. 577.
The appellant contends herein that there were special conditions which made it necessary that the railroad company take precautions to warn the public of the crossing, either by a flagman or lights, or other signals at the crossing. The Highway makes an “S” curve at the crossing, with the railroad crossing in the center of the “S” at this particular point. There was a little house on the east side of the Highway, north of the railroad and a gravel road leading toward the gravel pit between it and the railroad. There were bushes on the west side of the Highway, but we do not feel that this would interfere with Williams’ vision as he approached the crossing. However, it was brought out in the trial there was a switch engine on one of the spur tracks with its lights on, waiting for the train to pass the switch connection, at which time it would come up to the rear of the train and assist in pushing the same up the hill. The lights of this engine were in the vicinity of the crossing and that, together with the knowledge of the driver of the truck of the crossing, his driving at an excessive rate of speed under the circumstances, not having his truck under such control that he could stop before skidding 156 feet and then colliding with the train, convinced the Judge of the Lower Court the proximate cause of the accident was the negligence of the driver of the Williams *152 truck, and he rejected any claim of negligence on the part of the railroad. With this finding of the Lower Court we are in accord, and fail to see where there was any negligence on the part of the railroad company. They were hauling gravel in a customary manner as has been done for years over a spur track in a rural district and they were not required to have any flagman, or place any light, or other warning devices at this crossing.
We, therefore, conclude that the judgment of the Lower Court is correct and should be affirmed.
Affirmed.