AYRES, Judge.
This action presents a claim for damages for personal injuries sustained by plaintiff Willine Rice as a result of a collision between an automobile driven by her husband, Willie Rice, in which plaintiff was a passenger, and a railroad car, of the woodrack type, of the defendant railway company. (The action by the husband was voluntarily discontinued.) Plaintiff appeals from a judgment rejecting her demands.
Plaintiff-appellant assigns as error the action of the trial court in concluding there was no duty on the part of defendant’s employees to give warning by horn, whistle, or otherwise of the backing of its freight train across a highway crossing, and in finding there was no negligence on the part of defendant in blocking the highway crossing without giving warning to motorists using the highway.
The issues involved are factual in character. Tlje accident occurred May 16, 1964, when Willie Rice drove his automobile into the side of a railway car at a highway crossing known as the Slack crossing, located south of the corporate limits of Cullen, Louisiana. At the scene of the accident, the railroad, running in a general north and south course, is crossed at right angles by an asphalt-surfaced secondary parish road. Prior to the accident, defendant’s train had made a regularly scheduled stop. Several cars were uncoupled and left standing on the main line south of the crossing while the remainder of the train was engaged in switching operations on sidings and tracks leading to a paper mill located in the immediate vicinity. Just prior to the accident the train backed over the aforesaid crossing on the main line, assumed its former position, and coupled onto the cars left standing south of the crossing. While the train was halted, the crossing was blocked by the railroad car with which the automobile collided.
The principal question involves the negligence, vel non, of defendant. The first assignment of error, relating to the failure of defendant to give adequate warning of the train’s approach to the crossing, is clearly without merit. It is not claimed, nor does the evidence establish, that the accident occurred during or by virtue of the backing of the train over the crossing.
The burden of the argument advanced on behalf of appellant, in addition to the failure to give warning of the presence of the railroad car at the crossing, rests upon the contention that the railway car, of a dull black color, presented a thin silhouette difficult of observation on a dark, foggy, and rainy night. With reference to this defense, it appears appropriate to point out that plaintiff and her husband had lived within sight of this crossing for several years; had frequently crossed the railroad thereat and were thoroughly familiar with the crossing. Despite plaintiff’s and her husband’s testimony that it was a rainy, foggy night, the testimony of the investi *118 gating officer and other witnesses establishes there were no unusual atmospheric conditions; the weather was fair and clear.
Rice testified he was driving at a rate of only 16 m.p.h., whereas the investigating officer testified that Rice reported to him his speed was 35 m.p.h. Rice, however, apparently made no effort to stop or slow down until warned by his wife of the presence of the train on the crossing. Obviously, he did not observe the presence of this train until it was too late to stop, although he applied his brakes and skidded his car a distance of 35 feet.
The train involved consisted of a diesel unit and 55 cars, having an overall length of approximately Yz mile. The engineer testified that, as he passed over the crossing, no automobiles were in sight. One brakeman alighted at the crossing and, when the train stopped, uncoupled the cars leaving about half of them standing south of the crossing, in order to leave the crossing open while the train performed its switching operations. After completion of these operations, the train was again coupled and moved out, apparently uneventfully as none of the train crew saw the accident or had any knowledge thereof until so informed by train radio before the train reached Hope, Arkansas. The Rice automobile collided with the woodrack car which was located about midway in the train.
John R. Bowman, a civil engineer, was employed by defendant to make a survey of the railroad, highway, and conditions existing at the scene of the accident. According to his testimony, the asphalt-surfaced road is generally straight and level as it approaches the railroad crossing from the east, the direction from which the Rice car approached the crossing. The grade was shown to be only 1.5 percent, or a rise of IY2 feet per 100 feet.
There are reflectorized signs on either side of the crossing which illuminate and reflect automobile headlights from a point about 300 feet away. In addition, the surveyor testified that tests made showed a railroad flatcar or a woodrack car on the crossing was clearly visible from a distance of 300-350 feet, and that it remained within the beam of an automobile’s headlights approaching the crossing all the way to the railroad tracks.
The particular railroad car involved had an overall length, excluding couplings, of 53.5 feet, and a height at each end of 11.4 feet. The body of the car had a height of approximately 4Vz feet, and, for a distance of approximately 16 feet in the center, a depth of approximately 3-Y feet.
The general rule relative to negligence of a railroad, applicable to a factual situation such as we find here, is stated in 44 Am.Jur., p. 741, “Railroads,” § 501:
“In general, in the absence of special statute or ordinance, the presence of a railroad train or cars on a crossing is notice to the driver of a vehicle on the highway of such obstruction; and if there are no unusual circumstances, the railroad company is not chargeable with negligence per se merely because it leaves a train across the highway, without stationing guards, placing lights on the cars, or otherwise giving warning of the presence of the cars across the highway.”
This rule has been generally followed in this State. See: Sweeney v. Missouri Pac. R. Co., 149 So. 147, La.App., 1st Cir. 1933; Plummer v. Gulf, M. & N. R. Co., 153 So. 322, La.App., 1st Cir. 1934; Jones v. Texas & P. Ry. Co., 154 So. 768, La.App., 1st Cir. 1934; Domite v. Thompson, 9 So.2d 55, La.App., 2d Cir. 1942; Arnold v. Illinois Cent. Ry. Co., 32 So.2d 76, La.App., 1st Cir. 1947; Ramsey v. Louisiana & A. Ry. Co., 70 So.2d 171, La.App., 2d Cir. 1954; Senegal v. Thompson, 91 So.2d 865, La.App., 1st Cir. 1956 (writ denied, 1957) ; Rogers v. Williams, 172 So.2d 149, La.App., 1st Cir. 1965.
*119 In Domite v. Thompson, supra, it was ■stated that, as a general rule, the presence of railroad cars across a highway is sufficient notice to a motorist of the blocking of .a highway in the absence of unusual circumstances, and that a railroad company cannot be found negligent merely because it failed to station guards or light the cars, or otherwise give warning of the presence of the obstruction.
To the same effect is Plummer v. Gulf, M. & N. R. Co., supra, wherein the rule was recognized that unless there are some unusual conditions of danger it is not necessary for railroads to station a flagman at the approach of a crossing to warn motorists of such blocking of a crossing by railroad cars when such cars are placed in the usual and legitimate process of switching and operating the business of the railroad.
Too, it has been stated there is no law, nor indeed is there any practical reason, which would require the maintenance of a flagman or mechanical warning device by a railroad at crossings in sparsely settled rural areas. Alanza v. Texas & P. Ry. Co., 32 So.2d 341, La.App., 2d Cir. 1947; Rogers v. Williams, supra.
There were no unusual facts or circumstances shown to exist which required the railroad to station such a flagman or to place such warning devices at the crossing herein involved. There were no obstructions or conditions to prevent the driver of the automobile from seeing defendant’s train had he been keeping a proper lookout. The weather, as heretofore stated, was clear and fair. The crossing was well marked with reflectors illuminated by the lights of approaching motor vehicles. Plaintiff, however, cites and relies upon the following authorities: Nash v. Louisiana Ry. & Nav. Co., 153. La. 410, 96 So. 14 (1923); Squyres v. Baldwin, 191 La. 249, 185 So. 14 (1938); Smith v. Texas & Pac. Ry. Co., 189 So. 316, La.App., 2d Cir. 1939; Bertrand v. Missouri Pacific Railroad Company, 160 So.2d 19, La.App., 3d Cir. 1964 (writ refused).
In the Nash case, a string of boxcars had been left on a side track, blocking the view of the crossing so that the engineer could not see the brakeman on the lead car as the train was backi&g a line of cars over the crossing. While thus operating, the lead car was pushed into a wagon as it was traversing the crossing. That accident resulted from a backing movement under conditions in which the operator of the train could not see the lead car or the brakeman controlling its movement.
In the Smith case, plaintiff did not run into the side of the train but was hit by the locomotive of a passenger train which had failed to sound a warning for the crossing which both train and automobile approached simultaneously.
In the Bertrand case, the locomotive and the motor vehicle reached the crossing at the same time. While the motorist was found guilty of negligence in not stopping, the railroad company was held responsible to the passengers.
In Squyres v. Baldwin, supra, the train had stopped on a spur track across a highway crossing during a blinding snowstorm. The court held that in view of the blinding storm and the fact that the train was halted across a main U. S. highway, the crew should have protected the crossing. There, it was not a case of the failure of a motorist to see that which was visible.
These cases, particularly the latter, have no application to the factual situation presented here. The evidence shows that the train was visible to approaching motorists from a distance exceeding 300 feet. Moreover, plaintiff and her husband, who lived within sight of the crossing and were, as aforesaid, thoroughly .familiar with- it, were not maintaining a proper lookout or exercising adequate control of their automobile when they • failed to see the train or to stop their car before striking it.
*120 It has been consistently held that motorists who run into a standing or moving train at a properly marked railroad crossing are guilty of negligence constituting the proximate cause of any resulting accident. Ramsey v. Louisiana & A. Ry. Co., supra; Senegal v. Thompson, supra; Rogers v. Williams, supra.
The conclusion is inescapable that the proximate cause of the accident was the motorist’s failure to maintain a proper lookout or to keep his vehicle under proper control. Accordingly, we not only find no basis for disagreement with the conclusions reached by the trial court, but, from our own review of the record, are convinced of the correctness thereof.
Hence, the judgment appealed is affirmed at plaintiff-appellant’s cost.
Affirmed.