CULPEPPER, Judge.
This is a suit for damages arising out of an accident in which plaintiff drove his employer’s pickup truck into the side of the next to last car of a freight train which was slowly crossing a four-lane highway. A jury awarded plaintiff $150,000. The defendant appealed.
The scene of the accident is on Admiral' Doyle Drive, just west of the town of New Iberia. This highway runs north and south and consists of two 24-foot wide cement slabs separated by a 30-foot wide neutral ground. The total width of the highway right of way is 150 feet. A single railroad' track crosses the highway in an east-west direction. The track leads in a westerly direction to the mine of the Jefferson Island Salt Company and is used by only one or two trains a day. The highway approaches the crossing on a slight incline, the maximum slope in the south bound lanes of traffic being 1%, which means that in each 100 feet the highway rises 1 foot. The north bound and south bound traffic lanes are protected by rectangular “Louisiana Law-Stop” signs and also by “Railroad Crossing” cross arm signs, these being located about 15 feet from the tracks, and within the highway right of way, in clear view of approaching motorists. There are no other permanent protective or signaling devices.
On the night of August 9, 1962, at about 9:30 p. m., defendant’s freight train, consisting of an engine, five box cars and a caboose, was proceeding in a westerly direction toward the crossing. It was dark but the weather was clear. The train crew testified they stopped the engine at the highway to permit the crossing to be flagged; that a lighted fusee (a red flare that burns for 10 minutes) was placed near both the north and south bound traffic lanes; then the train proceeded across the highway at a speed of about 6 miles per hour with the bell ringing and the whistle blowing; when the box car immediately in front of the caboose was across the south *382 bound highway traffic lanes, it was struck by the pickup truck being driven by plaintiff.
On the night in question plaintiff was engaged in his employment as a “hot-shot driver” for Brown Oil Tools. This term is applied to a driver who delivers tools to a customer who does not want to wait for regular motor freight. He had just left his employer’s place of business in New Iberia and was going to Houston, along a route which he usually traveled and with which he was thoroughly familiar.
Plaintiff testified that he was driving in a southerly direction, at a speed of about 45 miles per hour, approaching the crossing, with his lights on dim; he saw the headlights of another vehicle approaching from the other side of the crossing in the north hound lanes of traffic across the neutral ■ground; these lights were shining underneath the box cars in such a manner as to •cause plaintiff to think there was no train .at the crossing; he did not see the box •car across his own lane of traffic until lie was about 60 feet from it; he attempted to apply his brakes but was unable to stop in time to avoid the collision; he saw no fusee, flagman or other signal.
. The initial issue presented on appeal is whether the railroad was negligent. As will be noted hereinafter, we conclude that it is unnecessary to decide this issue, because we find that plaintiff was clearly con-tributorily negligent, but we think it appropriate to discuss the issue in order to present a full picture of the case. The first case cited by plaintiff in his brief, and one of the principal ones on which he relies, is Squyres v. Baldwin, 191 La. 249, 185 So. 14. Unlike the present case, the plaintiff there was a guest passenger in an automobile which ran into the side of a freight train on a dark night during a heavy snow fall, which limited the driver’s visibility to about 25 feet. The court held under the circumstances that the railroad was negligent in not providing adequate warning, such as a flagman or other visible signaling device, and allowed recovery to the plaintiff guest passenger, who was found free of contributory negligence. (Of course, the case does not stand for the proposition that the driver was free of negligence.) In the course of its decision our Supreme Court set forth certain well established principles of law, on which plaintiff relies, and which plaintiff quotes in his brief, with comments, as follows:
“ ‘The view generally taken is that the presence of a train of cars at a crossing-is sufficient notice of obstruction and of danger, that the railroad company is not bound to give any further warning as to the presence of such obstruction, and that the trainmen have a right to assume that the operator of the vehicle will act in a reasonable way to avoid a collision. * * * There is, however, authority for the view that conditions may be such as to require a warning where, in the darkness, a car obstructs a crossing.’ 52 Corpus Juris, sec. 1782, pp. 190, 191. (Italics ours.)”
“The court recognized, however, a clear-cut exception to this general rule, saying :
“In A.L.R., Vol. 99, p. 1455, the exception is stated as follows:
“ ‘ * * * the railroad company’s duty is not necessarily discharged under all circumstances if it fails to give warning in some form of the presence of the obstruction. The atmospheric conditions, obscurity, and darkness of the crossing, the length of time it is obstructed, and the nature of the highway, may require that warning be given if the company is to be found in the exercise of due care.’ (Italics ours.)”
Plaintiff also cites several later cases involving the stiuation where a motorist runs into the side of a train which is already on a crossing as the motorist approaches, but these cases all follow the general rules of law set forth in the Squyres case, supra, and we see no need *383 to discuss them at this point. We will discuss them later in this opinion in connection with the issue of plaintiff’s contributory negligence.
Plaintiff argues this was an unusually dangerous crossing, bringing this case within the “exception” discussed in the Squyres case, because: (1) Admiral Doyle Drive is a high speed four-lane highway which is heavily traveled. (2) The railroad track was used only to service the Jefferson Island Salt Company and was used by only one or two trains in each 24-hour period. (3) The crossing was not equipped with any electric warning lights, barriers, gates or any other type of signaling device other than the standard railroad stop signs. (4) The 1% grade of the southern approach was such that plaintiff could see, under the box cars, the lights of traffic approaching the crossing in the north bound lanes of traffic, in such a particular manner that he was led to believe the crossing was clear until too close to stop. (5) Certain letters written by the defendant railroad to the Iberia Parish Safety Council indicate that the railroad knew the crossing was dangerous and promised to burn red fusees whenever a train was crossing.
A large portion of this voluminous record consists of evidence introduced by plaintiff to prove that, for the reasons set out above, this was a dangerous crossing such that the mere presence of the train on the crossing was not sufficient warning. Plaintiff also introduced the testimony of several witnesses that they saw no fusees at the scene. This latter factual issue is in serious dispute. All of the train crew, and one disinterested eyewitness who was at the scene when the accident occurred, testified that the fusees were put in place before the train crossed, but, when plaintiff’s truck struck the box car, gasoline from the truck spilled on the highway and the fusees were removed to prevent a fire. Plaintiff’s witnesses, all of whom arrived at the scene later, testified they did not see any fusees.
However, it is our conclusion that we need not decide whether the defendant railroad was guilty of any negligence. Even if we were to assume, for the sake of argument, that this crossing was unusually dangerous and that the railroad did not put out fusees or give any other additional warnings, it is apparent that, under the facts of this case, plaintiff was guilty of contributory negligence barring his recovery.
In the very recent case of Glisson v. Missouri Pacific Railroad Company, et al., La., 165 So.2d 289, (1964) our Supreme Court reiterated the duty of a motorist approaching a railroad crossing as follows:
“The general rule of law is that a motorist approaching a railroad crossing must use his senses of sight and hearing for possible oncoming trains, before traversing the crossing. Tucker v. Illiniois Central Railroad Company, 141 La. 1096, 76 So. 212; Rachal v. Texas & Pacific Railway Company, La.App., 61 So.2d 525; Matthews v. New Orleans Terminal Company, La.App., 45 So.2d 547. A motorist negotiating a railroad crossing is burdened with the responsibility of seeing and hearingthat which he could have seen and heard, and he is presumed in law to have seen and heard what he could have seen and heard. Jackson v. Cook, 189 La. 860, 181 So. 195. If the motorist’s view of the right of way is-obstructed, he must exercise a higher degree of caution. See Renz v. Texas & Pacific Railway Company, [La.App.] 138 So.2d 114, and the authorities cited therein.
******
“Applying these rules of law to the facts of the instant case, it is inescapable that if Mrs. Glisson had stopped at the stop sign, 48 feet from the crossing, she could and should have seen the train approaching. Even if she did not stop, but only slowed down, and looked and listened for the ax>- *384 proaching train, while maintaining her vehicle under such control as to be able to stop immediately, she could and should have seen the train approaching in time to stop. She lived in the immediate vicinity and was thoroughly familiar with this crossing and the view which she had of approaching trains. She certainly should have used greater caution.”
In the particular situation with which we are presented herein, i. e., of a train already on the crossing as a motorist approaches, we note particularly that the plaintiff has not cited a single case from the appellate courts of this state holding such a motorist free of negligence. A brief review of the cases cited by plaintiff shows the following:
In Ramsey v. Louisiana & A. Railroad Company, 70 So.2d 171 (2nd Cir.App.1954) the court held the railroad was free of negligence because there were no unusual or extraordinary conditions of weather or visibility which required additional warning of the presence of the train on the crossing. The court found the plaintiff’s negligence, in driving at an excessive speed and failing to keep a proper lookout, was the sole cause of the accident.
In Domite v. Thompson, 9 So.2d 55 (2nd Cir.App.1942) where the deceased driver ran into the side of a train on a crossing, there was a factual issue as to whether there was a sufficiently heavy fog to require the railroad to place additional visible warning signals at the crossing. The court found as a fact that there was only a light fog and therefore this case did not fall within the ruling in the Squyres case, supra. The court concluded the railroad was free ■of negligence and held that the sole cause of the accident was the negligence of the plaintiff in driving at an excessive speed and failing to keep a proper lookout.
Another case cited by plaintiff is Senegal v. Thompson, 91 So.2d 865 (1st Cir.App.1956, Writ of certiorari denied) in which the driver and his guest passenger sued under the theory of negligence discussed in the Squyres case, supra. The majority opinion held the railroad free of negligence, where visibility of the train standing across the highway was not obscured by fog, snow, rain or any other condition, and denied recovery to both the driver and his passenger. The dissenting opinion of Judge Tate concluded that the railroad was negligent in failing to give additional warnings and allowed recovery to the guest passenger but even the dissent agreed the plaintiff driver was barred from recovery by his own contributory negligence.
In Arnold v. Illinois Central Railroad Co., 32 So.2d 76 (1st Cir.App.1947) the plaintiff driver and his guest passenger sued on the theory that the railroad was negligent in blocking the highway with a freight train, during hours of darkness and in foggy weather, without having a flagman or other visible warning signal. The court concluded that the weather was very foggy and that the railroad was negligent. Recovery was allowed to the guest passenger but was denied to the driver on the grounds of his own contributory negligence in not keeping a proper lookout.
From the above resume of the principal cases relied on by the plaintiff it can be seen that in some the defendant railroad was found negligent in not providing adequate warning of the presence of a train on a crossing where darkness, weather conditions, the nature of the crossing or other conditions affecting the motorist’s visibility was such that the mere presence of the train on the crossing was insufficient to give warning to approaching motorists. However, we note particularly that not one of the Louisiana cases cited by plaintiff holds the driver of the approaching vehicle to be free of negligence where he runs into the side of a train which is already on the crossing as he approaches.
In the present case there was no snow, fog, rain or any weather condition or visual obstruction from which it can even be *385 argued that plaintiff should not have seen the train on the crossing. Plaintiff does not even contend that he was blinded by the lights of the approaching traffic. His only argument is that the crossing was so constructed that he saw the lights of oncoming vehicles underneath the box cars and this led him to believe that the highway was clear. In effect, what plaintiff is saying is that these lights approaching on the other lanes of traffic relieved him of the responsibility of looking ahead for obstructions in his own lane of traffic, and mind you, this was at a railroad crossing which plaintiff had crossed frequently and with which he was thoroughly familiar. Such a contention has no merit whatever.
In the case of Senegal v. Thompson, 91 So.2d 865 (1st Cir.App.1956) which we have already discussed briefly above, a somewhat similar argument was made where the grade of the approach to the crossing was about 6 inches to every 100 feet and the plaintiff driver contended he did not see the box car on the crossing because his own headlights were beamed under the box car. As noted above, both the majority and the dissenting opinions rejected this contention and held the plaintiff driver guilty of contributory negligence for not keeping a proper lookout. The majority opinion held that this condition was not even sufficient to classify the crossing as being unusually dangerous, requiring additional warnings.
We have no difficulty in concluding that the plaintiff was guilty of contributory negligence barring his recovery. The law is clear that a motorist approaching a railroad crossing must use his senses of sight and hearing to discover the presence of trains and this duty increases where the motorist is familiar with the crossing. There is no reason even suggested by the evidence that plaintiff could not have seen this train on the crossing in time to stop. Actually, plaintiff himself does not say that he could not have seen the train if he had looked in his own lane. He just says that because he saw the lights in the other lanes of traffic under the box cars he thought his own lane was clear.
We do not understand that plaintiff is contending this case falls within the dangerous trap doctrine as set forth in McFarland v. Illinois Central Railroad Co., 122 So.2d 845 (1st Cir.App.1960); Simon v. Texas & N. O. Railway Co., 124 So.2d 646 (3rd Cir.App.1960) and Renz v. Texas & Pacific Railway Co., 138 So.2d 114 (3rd Cir.App.1962). However, if such a contention is made we think clearly the dangerous trap doctrine has no application here. In the very recent case of Glisson v. Missouri Pacific Railroad Co., et al., La., 165 So.2d 289, our Supreme Court set forth the theory of this doctrine as follows :
“ * * * if a crossing is unusually dangerous because the view of the motorist is so obstructed as to require that he place himself in a position of peril dangerously near the tracks, before he has a view of the oncoming train, the railroad company will be held liable, unless it can show that it took unusual precautions, such as reducing the speed of the train, or increasing its warnings, or providing signaling devices, etc. The theory of this doctrine is that the railroad may not rely upon the duty of the motorist to stop and look, if the physical circumstances are such that stopping and looking will do the motorist no good.”
The present case is easily distinguishable from those enunciating the dangerous trap doctrine. In the first place, all of the dangerous trap cases cited involved trains approaching the crossing instead of a train which was already on the crossing as the motorist approached, as in the present case. Furthermore, the dangerous trap doctrine applies where the motorist’s view of the train is obstructed in such a manner that it would do the motorist no good even if he performed his duty to stop, look and listen. In the present case plaintiff’s *386 view of the train on the crossing was not obstructed in any manner. If he had performed his duty to look he could have easily seen the train.
The case of Wyatt v. Public Belt Railroad Commission for City of New Orleans, 121 So.2d 298 (Orleans App.1960) cited by plaintiff, is also distinguishable on the grounds that there the train was approaching the crossing at the same time as plaintiff. The train was not already across the plaintiff’s path, as in the present case.
For the reasons assigned, the judgment appealed is reversed and set aside. It is now ordered, adjudged and decreed that there be judgment herein in favor of the defendant, Missouri Pacific Railroad Company, and against the plaintiff, Joseph Hardy Stein, rejecting plaintiff’s demands at his costs. All costs of this appeal are assessed against the plaintiff appellee.
Reversed and rendered.
FRUGE, J., dissents and assigns written reasons.
TATE, J., concurs and assigns written reasons.