286 So.2d 799 (1973)
John CAMPBELL, Individually, as Tutor and Administrator of the Estate of his minor son, Patrick Campbell
v.
Sturby CHATELAIN and Allstate Insurance Company.
No. 5885.
Court of Appeal of Louisiana, Fourth Circuit.
December 10, 1973.
Rehearing Denied January 8, 1974.
*800 Albert B. Koorie and Nestor F. Mills, New Orleans, for plaintiffs-appellants.
Haygood, Larmann & Marshall, Frederick S. Haygood, Metairie, for appellees.
Drury, Lozes & Curry, Felicien P. Lozes and Madison C. Moseley, New Orleans, for defendant-appellee.
Before REDMANN, LEMMON and SCHOTT, JJ.
LEMMON, Judge.
Plaintiff's appeal seeks an increase in the amount of a judgment awarding damages for personal injuries sustained by his minor son.
In the March 7, 1970 accident the 16 year old boy sustained injuries to his right wrist consisting of a fracture of the distal radial epiphysis, a fracture of the ulna styloid, and an injury to the median nerve. An orthopedic surgeon reduced the fractures, placed the wrist in a long arm cast, and examined and treated the boy on multiple occasions through September, 1970.
At the time of discharge, the doctor did not foresee any permanent disability. He characterized the nerve injury as a temporary result of trauma, which had resolved quickly, and noted that the fracture of the epiphysis had healed with very good alignment. Although the styloid (the projecting part of the ulna, the smaller of the two wrist bones), had actually been pulled off the ulna, the boy's wrist at that point in time had not yet exhibited any instability.
In August, 1971 the boy consulted another orthopedic surgeon, who described the complaints as "some discomfort in the right wrist" and "the distal ulna moved freely in the wrist joint when he would push on it." X-rays revealed the ununited fracture of the ulna styloid. Upon examination the doctor found instability of the radial ulna joint, a slight weakness in the grip, a minimal decrease in radial deviation and a 15 degree loss of palmer flexion, with no loss of dorsiflexion.
The doctor attributed 1% permanent, partial disability of the upper extremity to the deviation and 3% of the loss of flexion.[1] He also estimated an additional 15% ultimate disability because of present weakness and because of the probability that the boy would develop degenerative arthritis, which normally occurs in later years after this type of injury. However, as to the effect of the injury on the boy's future earning capacity, the doctor would *801 only state that the boy might experience some discomfort and some weakness in handling heavy loads with his wrist in a certain position or in performing certain maneuvers, such as using a screwdriver. As to heavy labor, he stated "I think he might be able to do it. I don't know."
The doctor further recommended a surgical procedure, in which the surgeon would remove the ununited portion of bone and would recreate the ligaments with a strip of tissue taken from another portion of the body. He opined that the operation would be helpful because of the boy's youth and his obvious deformity. He further stated that the procedure would eliminate the bone fragment and would probably stabilize the ligamentous process, thus lessening the amount of residual disability. The doctor estimated the surgeon's fee at $400.00 and the cost of three to seven days of hospitalization at as much as $2,000.00.[2]
The boy, a senior in high school at the time of trial, testified that while working part-time at a warehouse in the fall of 1970, he had experienced pain in lifting 75-pound boxes and in lifting the door of the freight elevator. As to his hobby of playing drums, he stated, "When I play for a steady time, it starts to hurt." He planned to attend trade school and to pursue a career as an air conditioning and refrigeration mechanic.
The parties stipulated that medical expenses in the amount of $342.00 had already been incurred, and the jury awarded additional damages in the amount of $4,000.00. Contending that he proved an impairment of the boy's future earning capacity and a reasonable need for substantial future medical expenses, plaintiff argues that the jury award is inadequate even for the pain, suffering and permanent disability and grossly insufficient to compensate the loss of earning capacity and future medical expenses.
We cannot say that a $4,000.00 award to a 16 year old boy, who experienced a normal recovery from a wrist fracture in six months with minimal residual disability, is not within the range of the "much discretion" vested in the jury. C.C. art. 1934(3). As to impaired earning capacity, an actuary presented certain calculations based on the assumption that the earning capacity had actually been lessened, but admitted he could not determine that the boy would ever lose any wages at all. The medical and lay testimony also falls short in this respect. We view the evidence on this point as establishing only that the boy will experience minimum discomfort or weakness while using his wrist in extreme positions or in a certain manner not usually required in ordinary occupational or recreational activities. We cannot reasonably infer that his ability to engage in most fields of employment has been limited or that his earning capacity has been impaired because of the residual disability. We therefore conclude that plaintiff failed to prove any substantial impairment of future earning capacity.
We next consider plaintiff's contention that he adequately proved the need for additional medical procedures at a cost of $2,400.00, more than half of the total jury award. While we agree that plaintiff adequately proved the need for future surgery, especially from the standpoint of eliminating some residual disability, we cannot agree that he proved the procedure would cost $2,400.00. If the jury accepted the lower estimate of a $350.00 surgical fee and two days of hospitalization, the amount of future medical expenses would not be significant enough in relation to the total award for us to conclude that the jury failed to include a reasonable sum for this item of damages.[3] Furthermore, an *802 important reason for the surgery recommendation was to lessen the amount of permanent disability, and the jury could properly have taken this likelihood of decreased residual disability into consideration in determining the amount of the total award.
The judgment is affirmed.
Affirmed.
NOTES
[1] The first doctor viewed the 1971 x-rays and examined the boy in preparation for the March 8, 1972 trial, and assigned a 10% permanent, partial disability of the right hand.
[2] The first doctor would not recommend surgery at the time, but stated no reasons. He estimated the surgeon's fee at $350.00 and the period of hospitalization to be two to three days.
[3] This situation illustrates the value to an appellate court, reviewing a jury award, of special verdicts or interrogatories under C.C.P. art. 1811 et seq. Had the jury answered special interrogatories and specifically found plaintiff was not entitled to future medical expenses, we would have held this finding manifestly erroneous and proceeded to set an award. However, since the jury simply returned a lump sum verdict, we cannot infer that the jury denied future medical expenses, unless the proved amount is so significant in comparison to the total award as to indicate that the jury could not have awarded this proved item of damages.