SAMUEL, Judge.
These cases (consolidated in the trial court and here) arise from a railroad crossing collision between an automobile and a train. Both plaintiffs filed suit against the Louisiana & Arkansas Railway Company and the crew of the train involved in the collision for injuries and damages sustained by them. In addition, plaintiff Wallace Jack, a passenger in the automobile, sued the other plaintiff, the driver of the automobile, Curtis Ardoin.
Defendants answered, denying liability to plaintiffs, and asserting plaintiffs’ contributory negligence. After a trial on the merits, there was one judgment in favor of Wallace Jack and against the railroad and Curtis Ardoin, in solido, in the total sum of $102,140.[1] The judgment also dismissed Ar-doin’s suit for his own injuries and damages. From this judgment the defendant railroad has appealed suspensively and Curtis Ardoin has appealed devolutively. However, Ardoin has made no appearance in this court.
In his reasons for judgment, the trial judge found the railroad negligent in maintaining a crossing over-grown with weeds and grass sufficiently close to its right-of-way and of sufficient height as to have obstructed the view of both the occupants of the vehicle and the engineer and fireman of the train. He also found the driver of the vehicle, Ardoin, guilty of negligence for having failed, after stopping, “to proceed cautiously forward until a proper look-out could be had.” He found no negligence on the part of the train crew, and no contributory negligence on the part of plaintiff passenger, Jack. He also found Ardoin and Jack were not engaged in a joint venture which would require the imputation of the former’s negligence to the latter.
The record shows the collision occurred on November 2, 1976 at the intersection of Louisiana & Arkansas Railway Company’s main line track and Cardinal Street in La-Place, Louisiana. The train was seventy-two cars in length (25 of which were loaded and 47 of which were empty). It was traveling in a westerly direction toward Baton Rouge. The automobile was traveling in a northerly direction toward the Airline Highway. Thus, the train was approaching the intersection from the automobile driver’s right side.
The accident occurred at approximately 5 a. m. It was dark and rather cold at the time. The automobile was occupied by the driver, Curtis Ardoin, his guest passenger, Wallace Jack, and another individual. The three men lived in Ville Platte but worked in LaPlace during the week. They shared the same automobile for transportation to and from work, and Jack and Ardoin alternated weeks in driving. At the time of the accident Jack was seated in the front seat to the right of the driver, and the other passenger was seated in the back of the vehicle.
The record is extensive, and the case was bitterly fought. However, it is not necessary for us to engage in a detailed discussion of the arguments and contentions since the relevant facts, taken on balance, satisfy us that the trial judge did not commit reversible error.
At the outset, we note the trial judge states in his reasons for judgment that he discarded the testimony of defendant’s railroad agent, James H. Reynolds, as *502 well as the testimony of Sgt. Cecil J. Lyons and Officer Kevin Duhon, the latter two being the investigating officers at the scene of the accident. Since the issues involved in this case are primarily questions of fact, this court must accept the trial judge’s pronouncements regarding credibility of witnesses.
There is dispute regarding whether the train hit the automobile or whether the automobile hit the train. The evidence indicates that the automobile was damaged between its right front headlight and tire, and the train was damaged on its left front side. In view of the other testimony in the record, we do not see that the question of. which vehicle struck the other is determinative of the issue of negligence. The record shows, and the trial court found, the crossing involved was rather heavily used, was “rather steeply” graded (with the southern approach rising some 5 feet over a distance of approximately 25 feet), and was controlled only by a silent, unlighted railroad crossbuck type signal. The train crew testified the lights on the engine were flashing and the engine’s horn was sounding at the time of the accident.
The trial judge’s reason for finding the railroad and the driver of the automobile negligent was the existence of high weeds on the railroad right-of-way sufficiently close to the intersection of the road and the track as to obstruct the vision of a motorist approaching the intersection and stopping, before attempting to cross, at the location of the unlighted crossbuck. He determined the driver of the automobile, Curtis Ardoin, did not complete the duty imposed upon him by stopping at the cross-buck under these circumstances, but instead, because of the high weeds, should have pulled his automobile sufficiently close to the railroad track to enable him to obtain an unobstructed view of the track in anticipation of the approach of a train.
The trial judge’s conclusion that the intersection was obscured by weeds is confirmed by the testimony of the crew of the engine. The engineer and fireman both stated they did not see any vehicle approaching the intersection. They thought they heard a bumping sound as the engine crossed the intersection, but were unable to determine if there had been an accident or if the sound merely resulted from loose track. The conductor saw the vehicle had been damaged, and gave instructions for the train to be stopped.
The parties have argued at length regarding the appropriateness of pictures of the intersection taken at a date subsequent to the accident, but the testimony of the plaintiffs and the defendants’ crew clearly indicates sufficient justification for the trial judge to have concluded the intersection was inordinately crowded with weeds and grass. Moreover, the record indicates no grass had been cut at the particular intersection for a period in excess of five months, which period included the summer months when the weed-growing season is at its highest.
Given these facts, we find no error in the trial judge’s holding that the railroad was negligent for failing to properly maintain the intersection in a manner sufficient to allow an approaching motorist to see approaching trains, and we likewise find no error in the trial judge’s holding that Ar-doin, the driver of the vehicle, was negligent by not proceeding from the crossbuck, where his view was obstructed, to a spot nearer the track from which he could have obtained a clear view of the approaching train.[2]
The defendant railway, in sum, bases it position almost entirely on the rule that a motorist who runs into a standing or moving train at a properly marked railroad crossing is guilty of negligence constituting a proximate cause of a resulting accident.[3] *503 However, in the case of Odom v. Hooper,[4] the Louisiana Supreme Court in 1973 stated that automobile-train collisions should be considered on their own facts. The court made the following statement:
“We think that the time has come for automobile-train collisions to be adjudged on their own facts and circumstances— those surrounding the collision; litigants can no longer be subjected to hard and fast rules which are obsolete; there can be no absolute.”
In the present case, the trial judge did, in fact, consider the facts and circumstances of the case and did not conclude as a matter of law that the driver of the automobile was negligent simply because he struck a train at a railroad crossing. The trial judge specifically analyzed the facts and concluded there was negligence on the part of the railroad because of the maintenance of the weeds at the intersection and negligence on the part of the driver for not proceeding closer to the railroad track before crossing in order to ascertain the existence of an on-coming train.
The defendant railway also argues that a passenger in a vehicle approaching a railroad crossing is under an independent duty to exercise reasonable care in looking and listening for the approach of a train, and that such a passenger is barred from recovery by his own independent and contributory negligence if he could have seen or heard the train’s approach had he looked and listened.[5] We again rely on the findings of the trial judge to resolve this issue.
The evidence indicates the area was dark, and the trial judge concluded the passengers did. not hear the train’s horn or feel the vibrations allegedly caused by it. Moreover, the most important aspect of the evidence is that the driver complied with his legal duty by stopping at the unlighted crossbuck signal prior to attempting to cross the railroad track. Even assuming the weeds on the railroad right-of-way obstructed the driver’s vision, there is no evidence in the record indicating there had been sufficient notice to Jack, as a passenger, that the driver, Ardoin, would not have acted in a non-negligent manner by stopping immediately prior to reaching the railroad track in order to obtain an unobstructed view. On the contrary, the record shows that either immediately before or simultaneously with the collision, Jack shouted a warning to the driver, but it was too late. We know of no law which requires a passenger to anticipate a future negligent act of his driver at a railroad crossing when the driver gives all indication of prudent driving technique immediately preceding the collision.
We further agree with the trial judge that there was no joint venture between Jack and Ardoin which would impute Ardoin’s negligence to Jack. The men shared living accommodations during the week because they all lived in Ville Platte but worked in LaPlace. They shared automobile expenses and driving responsibility in going to and from work, but the essence of the shared responsibility and expense was to conserve money and not to act in a venture for gain. Moreover, there was no element of the right of one driver to control the other when he was a passenger.
In Squyres v. Baldwin,[6] the Supreme Court made the following statement regarding the facts necessary to constitute a joint venture:
“ ‘To constitute occupants of a conveyance joint adventurers, there must be not only joint interest in the objects and purposes of the enterprise, but also an equal right, express or implied, to direct and control the conduct of each other in the operation of the conveyance.’ ”
*504 In more recent case of Gaspard v. LeMaire,[7] the Supreme Court stated that in order for negligence of a driver to be imputed to a passenger, the relationship “must be one invoking the principles of agency,”. The general rule is that a guest in a vehicle is free to rely on the skill of the driver for safe transportation. There must be a finding of independent negligence on the part of the guest before he can be held contribu-torily negligent in the absence of a joint venture.[8] We have already decided there was no independent negligence on the part of Jack, and the record does not contain sufficient evidence to justify reversal of the trial judge’s conclusion that there was not a joint venture between them.
The final question for this court’s consideration is the propriety of the amount of the award for Jack’s damages for pain and suffering, etc. He sustained a lumbar strain of his back a reinjury of an old injury to his leg, a cut above the eye requiring six stitches, and a fracture of his left wrist. The injuries to the wrist immobilized his arm in a cast or splint for approximately a year, during which time he was hospitalized on two separate occasions. On the last occasion, he underwent surgery in the form of a bone graft to the wrist, with bone being taken from his elbow. He was not discharged by his orthopedic surgeon until January 11, 1978, approximately fifteen months post-accident. He suffered a 5% disability of his left arm based on the injury to his wrist. However, his prognosis is somewhat clouded by conflicting statements in the record.
Prior to the accident, plaintiff was employed full time at the rate of $9.50 per hour, and after the accident he was obliged to live on welfare and food stamps. He was unable to hunt, fish, run, participate in sports, or work around the house to the time of the trial. Plaintiff sustained periods of depression at times because of his financial problems. He took medication for pain to the time of trial for his wrist in addition to the shots and other medication given at the hospital.
Plaintiff was in traction for his back for a short time following the injury, and he was obliged to apply a heating pad to his leg for approximately four months. For one month after the accident and for one month after the bone graft surgery, plaintiff had to remain in bed at home. The bone graft left a scar on plaintiff’s elbow and wrist, and the surgery required him to take up to five shots per night for pain. Immediately after the accident, he was required to wear a back brace for approximately three weeks and walked with crutches for several months.
The trial judge awarded Jack $70,000 for his injuries and made the following statement with regard to that award:
“There is no doubt that Jack has a 5% disability of the left arm and wrist and that he has not returned to work as of the date of trial. However, the prognosis of Dr. Blanda that the arm and wrist would improve with rehabilitation and that Jack could return to his normal occupation, makes it difficult for this court to properly determine the loss of future earnings if any. This court will consider damages for the 5% disability in calculating damages inflicted on Jack: Jack’s pain, suffering and mental anguish from the injuries and their long and painful treatment, coupled with the worry brought on by his financial plight, together with the permanent disability of the arm and wrist justifies an award of $70,-000.”
Defendant contends the award is excessive in that, at best, it should be within the range of $3,000 to $4,000.[9] The authorities relied on by defendant for an award in that range involve simply a wrist injury, and do *505 not involve other injuries similar to those suffered by plaintiff in this case. Although we tend to disagree with the amount awarded by the trial judge, the jurisprudence gives great weight to the “much discretion” afforded the trier of fact by Article 1934(3), and in Reck v. Stevens,[10] the court made clear its reaffirmation of the previous decisions honoring the trial judge’s discretion. The court in Reck went on to say that before a trial court award may be changed, the reviewing court must look first to the individual circumstances of the case before it and not to prior awards. Only after analysis of the facts and circumstances peculiar to the case before it and to particular injuries and their effects upon the particular injured person may it determine that an award is excessive. While the wording in Reck is somewhat different, the result is basically the same as the Supreme Court’s pronouncement in Coco v. Winston Industries, Inc.[11] Consequently, given the duration of the plaintiff’s disability, the effect which it had on his life after the accident, and of the injuries suffered by him we do not feel we are in a position to alter the lower court’s award of damages.
Defendant finally argues that the award of lost wages to plaintiff should be reduced by the sum of $3,000 because the trial court allegedly used plaintiff’s gross earnings for the year following the accident rather than his net loss. This argument is based on the answer to an interrogatory by plaintiff in which he stated his gross earnings for the year after the accident were approximately $20,000 with his net loss being $17,000 per year. However, there is also evidence that plaintiff lost compensation for overtime to which he was entitled but which he was unable to prove with the degree of certainty necessary to make a specific award for that item. Under all the circumstances, we conclude the trial court did not err in making its award of lost wages.
For the reasons assigned, the judgment appealed from is affirmed.

AFFIRMED.

REDMANN, J., dissents with written reasons.

. The award was itemized as follows: “.... $70,000 for injuries and permanent disability; $30,000 for loss of earnings; $1,360 for medical expenses.”

. See, for example, Corr v. Price, La.App., 284 So.2d 823; Gibson v. Kansas City Southern Railroad Company, La.App., 233 So.2d 26. Compare, Perkins v. Texas and New Orleans Railroad Company, 243 La. 829, 147 So.2d 646.

. Defendant cites Rice v. Louisiana & Arkansas Railway Company, La.App., 187 So.2d 116; Rogers v. Williams, La.App., 172 So.2d 149; *503 Stein v. Missouri Pacific Railroad Company, La.App., 166 So.2d 381; Rico v. Texas and New Orleans Company, La.App., 140 So.2d 198.

. La., 273 So.2d 510, 514.

. Defendant cites Leger v. Texas & P.R. Co., La.App., 67 So.2d 775; Murray v. Yazoo & M.V.R. Co., La.App., 183 So.2d 543; Lockhart v. Missouri Pac. R. Co., La.App., 153 So. 577; and McQuiston v. Shreveport Rys. Co., 12 La.App. 277, 124 So. 706.

.191 La. 249, 263, 185 So. 14, 19.

. 245 La. 239, 250, 158 So.2d 149, 152.

. See Bernard v. Hungerford, La.App., 157 So.2d 246.

.Defendant cites Moss v. Travelers Indem. Co., La.App., 351 So.2d 290; Distefano v. Lumbermen’s Mut. Cas. Co., La.App., 340 So.2d 1110; Campbell v. Chatelain, La.App., 286 So.2d 799; Aucoin v. Fidelity General Insurance Company, La.App., 219 So.2d 532.

. La., 373 So.2d 498.

. La., 341 So.2d 332.