540 So.2d 1017 (1989)
Orvie Nell COOK and Terry Lynn Cook, Appellants,
v.
WAL-MART STORES, INC. d/b/a Wal-Mart Discount City, Appellee.
No. 20321-CA.
Court of Appeal of Louisiana, Second Circuit.
February 22, 1989.
*1018 Gordon & Bailey by Jack M. Bailey, Jr., Shreveport, for appellants.
Mayer, Smith & Roberts by Vicki C. Warner, Shreveport, for appellee.
Before FRED W. JONES, Jr., NORRIS and HIGHTOWER, JJ.
FRED W. JONES, Jr., Judge.
Plaintiff Orvie Cook allegedly slipped in some water and fell at a Shreveport Wal-Mart store on May 8, 1985, injuring her back, wrist and hip. She sued the store and its insurer for her damages and medical expenses on the theories of negligence and strict liability. Defendants answered, denying liability and alleging plaintiff's comparative negligence as a defense. A bench trial was held and Wal-Mart's fault was found to be the sole cause of the accident.
Plaintiffs appealed the trial court judgment awarding $28,500 in general damages and $9,920 in special damages, claiming the trial judge abused his discretion and the awards are inadequate. Liability is not at issue. For the reasons explained, we increase the award for general damages to $50,000 and specials (medical expenses) to $26,419.54, and award $7500 for future medical expenses.
After this appeal was filed, appellees filed a motion to strike certain portions of appellants' brief, on the grounds that they were not made a part of the record of the trial. We have examined the record and depend only upon evidence contained therein in reaching our decision. Therefore, we sustain the motion to strike insofar as appellants rely upon evidence not in the record.
After this accident, plaintiff went to the emergency room, complaining of pain in her right hip, right forearm, right shoulder and neck. Although x-rays revealed no fractures, her right side was severely bruised. She was given pain medication and instructed to rest in bed. The next day, she visited her family physician, Dr. Asseff. He prescribed pain medication and valium.
She then consulted her lawyer, who sent her to Dr. Burda, a rheumatologist. He first saw her on May 16, 1985, and continued to treat her, intermittently, until just prior to trial. His initial examination revealed visual signs of injury, consisting of extensive bruising and blood clots under the skin on her right forearm, right thigh, and ankle. She had areas of muscle spasm in the base of her neck, about the shoulder blades, and in her low back and hip. She also complained of headaches. Dr. Burda diagnosed a traumatic myoligamentous strain to the right shoulder and back area, gave her pain medication, and referred her to Dr. Wojcik, a chiropractor, for physical therapy.
Plaintiff first saw Dr. Wojcik on May 17, 1985. His examination revealed her range of motion was severely limited by pain. She walked with a limp. He performed a soft manipulation of her spine, and in the course of the treatment, through July 1986, she was also treated with heat, electro-therapy and massage. She was fitted with a TNS unit for pain.
Dr. Burda subsequently referred plaintiff to Dr. Long, a neurosurgeon, when she developed pain, numbness and tingling in her right hand. Dr. Long diagnosed carpal tunnel syndrome (injury to the nerve and ligaments of the wrist) and performed surgery to correct this problem in October 1985. He stated that this problem preexisted this accident, but that the fall at Wal-Mart aggravated the condition and necessitated surgery.
Dr. Burda continued to see plaintiff after her wrist surgery. She was still complaining of pain in her right shoulder and low back area. By February 1, 1986, he felt she had reached the point of maximum improvement from her injuries, but stated that she was still having problems with low back pain. He saw her once in March, 1986, at which time he stated she was essentially asymptomatic. He told her to continue using the TNS unit for pain and return in one month. When he saw her again in April 1986, however, she reported recurrent back pain with increased activity.
*1019 Plaintiff then began seeing Dr. Long again for her low back and left leg pain. In spite of conservative treatment, she got worse and Dr. Long performed a laminectomy in July 1986. After the surgery, he fitted her with a back brace, which he said she will continue to need in order to engage in any significant activity.
Plaintiff then went back to Dr. Burda, who ultimately decided she had developed fibromyalgia syndrome and put her on experimental medication for this condition. He last saw her on June 16, 1987, at which time she was still experiencing pain and stiffness in the right shoulder and low back areas, and reported increased symptoms upon attempts to increase her activity level. He told her to continue taking her medication and to continue physical therapy.
There was testimony that plaintiff was a very active individual before this accident occurred. With her husband, she enjoyed such recreational activities as traveling, boating, motorcycling, dancing and gardening, none of which she was able to resume after her fall. She is also no longer able to maintain her household without outside help, walk more than short distances without discomfort, grip effectively with her right hand, and stoop or bend, and she testified she is still in pain much of the time.
In an opinion written some eight months after the trial, the judge noted that as a result of the accident, plaintiff sustained injuries to her back, hip and wrist, in addition to aggravating pre-existing congenital spinal problems and carpal tunnel syndrome in her wrist. He found that this aggravation "accelerated the difficulties which the plaintiff had and resulted in her inability to enjoy a number of the lifestyles that she had prior to the fall." He also found that she suffered pain and permanent disability which flowed from the injury. However, the judge stated that all of plaintiff's injuries cannot be attributed to this accident, as she would have experienced some of these difficulties regardless of the accident, and did not mention the 1986 laminectomy.
On appeal, plaintiff argues that the award is inadequate, as the trial judge failed to award the total amount of medical expenses incurred, and failed to consider future medical expenses. They also claim the trial judge incorrectly concluded Mrs. Cook had pre-existing congenital problems which are responsible for her present condition, and thus the general damage award is also abusively low. Finally, plaintiffs argue that the trial judge erred by failing to compensate Mrs. Cook for lost economic opportunity and Mr. Cook for loss of consortium.
Defendants did not appeal or answer plaintiffs' appeal, but in response to their contentions argue that they failed to prove the accident is the cause of all of Mrs. Cook's medical problems, and that the award was thus adequate and commensurate with the facts and circumstances of this case.
Upon finding that the trial court has abused its wide discretion, a reviewing court may raise an insufficient award of general damages to the lowest amount that could be appropriately awarded. Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976); Garrison v. State, Through Dept. of Highways, 401 So.2d 528 (La.App. 2d Cir.1981).
After reviewing this record, we conclude that such an abuse of discretion has occurred here.
We recognize, as the trial judge noted, that Mrs. Cook suffers from several preexisting conditions which were aggravated by her fall. She suffers from several congenital back conditions, and has sustained back injury in several previous accidents, including two slip and fall accidents such as this one. One of these accidents necessitated lumbar disc surgery in 1976. She also suffers from marked degenerative osteorarthritis and reactive sclerosis.
However, a tortfeasor takes his victim as he finds him, and is responsible for all natural and probable consequences of his tortious conduct. Finley v. Bass, 478 So.2d 608 (La.App. 2d Cir.1985). Where a defendant's negligent action aggravates a *1020 preexisting injury, he must compensate the victim for the full extent of the aggravation. Perniciaro v. Brinch, 384 So.2d 392 (La.1980).
We disagree with the position of the defendant that plaintiffs failed to prove a causal connection between all of Mrs. Cook's injuries (including aggravation of preexisting conditions) and the Wal-Mart fall. Burda, Long and Wojcik all were of the opinion that the Wal-Mart fall aggravated her previous back problems and pre-existing conditions and was a causal factor of both the carpal tunnel and back surgery. Dr. Burda also testified that the fibrositis is causally related to the Wal-Mart fall, and that this is a permanent and incurable condition from which she will probably suffer for the rest of her life. He estimated the approximate cost of her future treatment to be $1500 or $2000 per year. Defendant presented no medical evidence to contradict this expert testimony. We therefore conclude that the general damage award, which was apparently based on the erroneous conclusion of the trial judge that Mrs. Cook's current problems are not attributable to this accident, is abusively low.
After a review of similar injuries in other cases, we conclude that the lowest award the trial court could have made that would have been within his discretion is $50,000. See Faust v. Lombardo, 463 So.2d 745 (La.App. 4th Cir.1985), writ denied 464 So.2d 1380 (La.1985); Jack v. Kansas City Southern Ry. Co., 392 So.2d 499 (La.App. 4th Cir.1980), writ denied 397 So.2d 805 (La.1981); Joseph v. Albarado, 407 So.2d 1277 (La.App. 4th Cir.1981); and Turner v. Safeco Ins. Co. of America, 472 So.2d 43 (La.App. 1st Cir.1985).
As to the special damages, we find that the award of $9,920 is inadequate. The trial judge does not explain how he arrived at this figure, but the record contains uncontradicted evidence indicating that Mrs. Cook's accident related medical expenses were $26,419.54. In computing these expenses, we have not considered those for the Southpark hospitalization, or the bills of Dr. Tyne, which the evidence indicated were not related to this accident.
Additionally, plaintiff has established that she is entitled to an award for future medical expenses in the amount of $7500 for treatment of her fibrositis. We find the evidence that she may also need additional back surgery in the future to be speculative in nature, and thus reject this claim. We also find that the evidence does not support an award for lost economic opportunity for Mrs. Cook or loss of consortium for her husband.
Conclusion
For these reasons, the trial court award of general damages in favor of Orvie Cook is increased from $28,500 to $50,000, the award for medical expenses from $9,920 to $26,419.54, and plaintiff is awarded $7500 for future medical expenses. As amended, the judgment of the trial court is AFFIRMED, at appellee's cost.